[No. 19999. *En Banc.* November 17, 1926.]

PARTHENA LOGAN, *Respondent,* v. JAMES T. LOGAN, *Appellant.*[1]

[1] DIVORCE (80)—DISPOSITION OF PROPERTY—DIVISION BETWEEN SPOUSES. In decreeing a divorce, the court may make a division of the separate properties of the parties as well as of community property, and is not bound by a separation agreement entered into some years previously making a division of all their property in the event of a divorce then contemplated, where such action was abandoned and the parties became reconciled and resumed marital relations for a period of years (TOLMAN, C. J., MACKINTOSH, and HOLCOMB, JJ., dissenting).

Appeal from a judgment of the superior court for Spokane county, Witt, J., entered March 2, 1926, upon findings in favor of the plaintiff, making a division of the property on awarding a divorce. Affirmed in part and reversed in part.

*W. D. Scott* and *R. L. Campbell,* for appellant.
*Hamblen & Gilbert,* for respondent.

PARKER, J.—The plaintiff, Mrs. Logan, commenced this action in January, 1926, in the superior court for Spokane county, seeking a decree of divorce from the defendant, Mr. Logan, upon the ground of cruelty. He promptly answered and cross-complained, seeking a decree of divorce from her upon the same ground. Each asserted rights in their property, adverse to the other. A trial in that court upon the merits resulted in findings and an interlocutory decree, divorcing them and decreeing a division of their property between

[1]Reported in 250 Pac. 641.

them. From this disposition of the case in the superior court, Mr. Logan has appealed to this court, contending that the trial court erred in finding him guilty of cruelty and awarding to her an excessive amount of their property.

These parties were married to each other in this state in the year 1881. At that time Mr. Logan possessed a small amount of personal property, of the value of only a few hundred dollars. At that time, Mrs. Logan possessed no property of any considerable value. In the year 1910, they had accumulated city and farm property of the value of many thousand dollars, situated in Spokane and Whitman counties, in this state. All the property then possessed by them was community property. They had then become estranged and agreed to separate, and, looking to a division of their property interests, on July 2d of that year, entered into a written contract, the terms of which, so far as need be here noticed, read as follows:

"Whereas difficulties have arisen between the said parties and Whereas it has become manifest they cannot longer live together as husband and wife, and Whereas they have agreed to live separate and apart from this date on, and by reason thereof they have made a settlement of property rights.

"Now therefore this indenture witnesses, that the said parties do hereby enter into an agreement whereby they divide what property they now have between them, and they further agree that any property that either of them shall hereafter acquire shall be his or her sole and separate property, and the other party having no interest in the same whatsoever, even though of record, giving the party of record the sole and exclusive right to sell, transfer or encumber or do as he or she may wish with said property, without the other party joining in or taking any interest in the same whatsoever. [Here follows a description of all of their real property and an agreement as to its division; and,

also, an agreement as to the division of their personal property.]

"It is hereby further agreed and understood that, in event either of said parties should see proper at any time to bring suit for a decree of divorce, the plaintiff therein shall be responsible for any and all costs, such as attorney's fees, court costs and such other expenses incurred therein by reason of said suit, to the exclusion of the other party.

"This indenture is intended as a complete and full settlement of any and all property rights between said parties, so that any and all property that may hereafter appear of record in the name of either one shall be his or her sole and separate property, the same as though said parties had never intermarried."

On the same day this agreement was signed by them, Mrs. Logan commenced an action in the superior court for Spokane county seeking a decree of divorce from Mr. Logan upon the ground of cruelty. On the same day, each executed a deed conveying to the other certain described portions of their real property, as agreed upon. These deeds were by them placed in escrow for future delivery; the escrow agreement, endorsed upon the envelope containing the deeds, reading as follows:

"Spokane, Washington.
July second, 1910.

"This envelope contains a deed given by Mrs. Logan to J. T. Logan for their farm in Whitman county, Washington; also contains a deed from J. T. Logan to Mrs. Logan for the apartment house and lot in Spokane, Washington. Said deeds are to be held by W. D. Scott until the court decrees a divorce between said parties. In event said court grants a decree of divorce between said parties, said deed shall be delivered, one to each of said parties, according to the deeds, otherwise the deeds are to be held by W. D. Scott till ordered jointly by said parties, what disposition is to be done with them.            J. T. Logan
"Parthena Logan."

That divorce action was never brought to trial, but was abandoned. Thereafter, on October 31, 1912, both Mr. and Mrs. Logan endorsed upon the envelope containing the escrow agreement written authorization for the delivery of both of the deeds, which delivery was accordingly made to each of them, and thus all of their property became vested in each of them as their separate property, as agreed upon.

They continued to live apart until the year 1916, when they again became reconciled to each other, resumed their marital relations and continued to live together until about September, 1925, that is, for a period of approximately nine years, when they again became estranged and separated. At all times since the making of their original agreement for separation in July, 1910, they possessed and treated all of the property divided between them or acquired by either of them after the making of that agreement, as their separate properties.

A few months after their second estrangement and separation, that is, on January 5, 1926, Mrs. Logan commenced this action, seeking a divorce from Mr. Logan upon the ground of cruelty; he promptly answering and cross-complaining, seeking a divorce from her upon the same ground; she claiming to be entitled to be awarded a portion of the whole of their properties in value in excess of her separate property, and he insisting that she be awarded no part of his portion of the separate property, basing his claim in that behalf, both upon the original separation agreement and property division agreement of 1910, and upon her alleged cruelty inflicted upon him, rendering him entitled to be decreed without blame touching the charges of cruelty.

The trial court made findings, which are somewhat
3—141 WASH.

inconsistent, touching the question of cruelty of each against the other, in that it found each guilty in that respect; finding specified acts of cruelty on the part of Mr. Logan and making only the general finding against Mrs. Logan that she "has treated the defendant in a cruel manner." But as we read the findings and decree, including the awarding of the division of the property, we think it is apparent that the trial court awarded the decree upon the theory that he and not she was most to blame, though the decree in terms awards a divorce to both of them. We do not understand counsel for Mr. Logan to seriously contend that the decree is erroneous in the sense that a divorce should have been denied to both of them and the case dismissed. Indeed, the question of which has been most to blame in connection with the respective charges of cruelty seems to be noticed by counsel for Mr. Logan only as bearing upon their alleged claim of excessive award of property to Mrs. Logan.

The decree awarded to Mrs. Logan property of the approximate value of forty-three thousand dollars from the property possessed by both of them, and awarded to Mr. Logan property of the approximate value of forty-eight thousand dollars from the property possessed by both of them. We shall assume, as counsel for Mr. Logan contend, that the decreed division of the property was made from separate property possessed by Mrs. Logan of the approximate value of thirty-three thousand dollars, and from separate property possessed by Mr. Logan of the approximate value of fifty-eight thousand dollars. To accomplish the nearly equal division of the whole of the property, the court awarded to Mrs. Logan ten thousand dollars of certain securities possessed by Mr. Logan, thus increasing her separate property interest from thirty-three thousand dollars to forty-three thousand dollars,

and reducing his separate property interest from fifty-eight thousand dollars to forty-eight thousand dollars. While the legal title to all of this property rested in the respective parties as their separate property, the record warrants the conclusion that it was practically all the fruits of the community property which they possessed and divided between themselves in 1910. The record also warrants the conclusion that the earning ability of Mr. Logan exceeds that of Mrs. Logan. There are no minor children to be provided for.

Contention is made in behalf of Mr. Logan that the evidence does not warrant the finding of the court that Mrs. Logan is entitled to a divorce upon the ground of cruelty as against him. A review of the evidence convinces us that we would not be warranted in disturbing that conclusion of the trial court. Indeed, we think the evidence calls for the conclusion that he and not she was most to blame in that respect. In other words, we are convinced by the evidence that she was not guilty of cruelty towards him to the extent of entitling him to be awarded a divorce as the innocent party in that regard.

[1] The principal contention here made in Mr. Logan's behalf is that, because of the separate property agreement entered into between him and Mrs. Logan in 1910 and the exchange of deeds in consummation thereof, the court should have left the property interests of the parties as so fixed, and not awarded to Mrs. Logan ten thousand dollars from Mr. Logan's separate property. The argument seems to be that this agreed division of the property in 1910 is binding on the parties and the court at this time. We do not think so. Whether or not it should have been followed in the divorce action then commenced, or any divorce action commenced as then contemplated, and before any reconciliation between them, we need not now decide. True, the court found these parties with all their prop-

erty as separate property, but that does not at this
time stand in the way of the court decreeing a division
of that property, treated as a whole. We are wholly
unable to see that that separate property, at this time,
is any more beyond the reach of the court in this case
than any separate property which might have been ac-
quired by the parties in some other manner. The power
of the court in a divorce action to make division of
separate property between the parties is as complete
as is its power to make division of community property,
upon decreeing a divorce. In Rem. Comp. Stat., § 989,
(P. C. § 7508) we read:

"In granting a divorce, the court shall also make
such disposition of the property of the parties as shall
appear just and equitable, having regard to the respec-
tive merits of the parties, and to the condition in which
they will be left by such divorce, and to the party
through whom the property was acquired, . . ."

This court has repeatedly given full force and effect
to this provision of the statute, as applicable to both
community and separate property. *Fitzpatrick v.
Fitzpatrick*, 105 Wash. 394, 177 Pac. 790; *Nelson v.
Nelson*, 131 Wash. 646, 230 Pac. 819; *Jones v. Jones*,
140 Wash. 90, 248 Pac. 57. Having regard to the
respective merits of the parties to this controversy,
the source from which the property was acquired, their
respective earning powers and the condition in which
they will be left by this divorce, we are of the opinion
that we should not hold that the trial court abused its
discretion in awarding division of the property as it
decreed.

We do not regard our views here expressed as in the
least impairing the effect of the separation and prop-
erty division contract in so far as that contract and
the deeds made in pursuance thereof changed the
property from community to separate property. We

do hold, however, that, in so far as that contract contained an agreement with reference to any prospective divorce action, it had reference only to such a divorce action as was then within the contemplation of the parties, and cannot be construed as having any reference to, or bearing upon, a divorce action which might be commenced years later, after such a long period of reconciliation as ensued, drawing in question alleged causes for divorce arising years after such reconciliation.

We conclude that the interlocutory decree should be affirmed, in so far as it adjudicates Mrs. Logan to be entitled to a divorce from Mr. Logan upon the ground of his cruelty towards her, and in so far as it awards division of their property.   It is so ordered.

We conclude that the interlocutory decree should be reversed in so far as it may be construed as adjudicating Mr. Logan to be entitled to a divorce from Mrs. Logan upon the ground of her cruelty towards Mr. Logan.   It is so ordered.

FULLERTON, BRIDGES, MITCHELL, MAIN, and ASKREN, JJ., concur.

TOLMAN, C. J. (dissenting)—With that portion of the majority opinion dealing with the division of the property, I am unable to agree.   I concede that the statute is as quoted and that it means what it says, but we have other statutes sanctioning conveyances from husband to wife and vice versa and permitting them to contract between themselves.   When such a contract is made, and is conceded to be fair when made, it should be enforced just as contracts between strangers are enforced.   It is here conceded that the contract of these parties was entirely fair when made, and that the only reason why one now possesses more than the other is that one class of property increased in value while the

other did not. As to that, the parties took their chances, and having definitely provided that the division was a final one and that all subsequent increase and accumulation should belong separately to the one so acquiring, they are bound thereby. This is not like an instance of original separate property, where the husband is bound to provide for the wife's needs notwithstanding that there may be no joint accumulation, but here the parties have solemnly contracted each with the other as to their property interests, which should be final, if fair. Of course the contract does not relieve the husband from his duty to support the wife, and, even if it did, it might be argued that such a provision is against public policy, and in either event support money is allowable as alimony. The holding of the majority will, I fear, make insecure every property settlement heretofore and hereafter entered into by husband and wife, and cast a great burden of litigation upon the courts to no good purpose. A contrary rule, making all fair contracts final according to their terms, will harm no one, as the courts will still be free to award alimony to the wife in all cases when she has need of additional income and the husband is able to pay. Such should have been the ruling here. If the wife found her separate estate insufficient to provide for her reasonable needs in accordance with her station in life, an alimony allowance could have been awarded and made a lien upon the husband's estate, which would have left him still the right of testamentary disposition, or prior disposition in the event of the wife's death, of which he should not be deprived without good reason.

I therefore dissent as to the property settlement.

MACKINTOSH and HOLCOMB, JJ., concur with TOLMAN, C. J.