[No. 25069. Department One. June 21, 1934.]

LENORA A. OTTO, *Respondent and Cross-appellant,* v. FLOYD L. OTTO, *Appellant.*[1]

*MacMahon & Poe (J. T. S. Lyle,* of counsel), for respondent and cross-appellant.

STEINERT, J.—In this action, each of the parties seeks an absolute divorce from the other, the custody of their minor child, and a settlement of their property rights. After a hearing upon the issues, the court made findings of fact and conclusions of law, and thereupon entered an interlocutory decree awarding a divorce, together with the custody of the child, to the plaintiff, and distributing the property. From the interlocutory decree, each of the parties gave notice of appeal.

The appellant husband has not paid any ap-

[1]Reported in 33 P. (2d) 1074.

pearance fee in this court, has not filed any brief, and did not appear at the argument. We treat his appeal as abandoned.

The cross-appeal of the wife relates solely to the division of the property. The facts which bear upon this phase of the case are too long and involved to be detailed within any reasonable limit. We can only make a very general statement.

The parties to the action were married in 1923. Both of them had been previously married, and had separated from their former spouses. At the time of their marriage to each other, Mrs. Otto owned a farm which she was then operating, and also had about fourteen hundred dollars cash in bank and other property worth about six hundred dollars. Mr. Otto had very little, if any, property, but had a position as railroad station agent which paid him $165 a month. After their marriage, the parties lived on the wife's farm for the greater part of the time until it was sold in 1924. In the meantime, however, Mr. Otto retained his position as station agent. After the sale of the farm and at various times prior to the commencement of this action in 1933, they engaged in, and jointly operated, a number of businesses. During portions of the same period, Mr. Otto held positions with various railroad companies at a very substantial salary.

Mrs. Otto appears to have attended to most of the banking done by the parties. The record discloses that she opened a number of accounts in various banks. Some of these accounts were in her own name; others were in their joint names. Some were savings accounts; others were checking accounts.

The moneys which Mrs. Otto had prior to their marriage, supplemented by that which she received from the sale of her farm, seem to have been the principal

source of revenue through which their successive businesses were acquired, although it also appears that Mr. Otto's salary checks, which at times were as high as $215, were generally deposited by Mrs. Otto in one or another of the various accounts, and, after the payment of community expenses, were likewise used in the acquisition of the various businesses. Some of the funds, both separate and community, were used to purchase insurance and to pay off a mortgage indebtedness on property standing in the name of Mrs. Otto.

These business ventures had two very unfortunate features. First, they were almost uniformly unsuccessful; second, they gave rise to considerable strife and dissension between the parties. This dissension came about, in part, from the fact that Mr. Otto was troubled with varicose veins of the legs, which interfered with any kind of work that required him to be on his feet for any great length of time. According to his story, it was this debility that compelled him to give up business periodically and go back into the railroad service. There is, on the contrary, considerable evidence to the effect that Mr. Otto was so surly and quarrelsome as to drive business away, and for that reason, had to seek employment elsewhere. At any rate, whatever the cause, the fact is that one business after another failed. It is also a fact that, during the interim between the loss of one business and the acquisition of another, Mr. Otto was able to secure railroad positions at a substantial salary, the proceeds of which were used as already stated.

In the spring of 1933, the friction and dissension between the parties had grown to such an extent that they decided to separate from each other. Their discussion of the subject contemplated a payment by Mrs. Otto to Mr. Otto of one thousand dollars. Of this, it seems

that one hundred fifty dollars was then paid to Mr. Otto, who immediately left for the east. In a few weeks, however, he returned, and Mrs. Otto decided to "give him one more chance," as she expressed it, by setting him up in business again. A delicatessen in Olympia was purchased and was operated by Mr. Otto. That business, however, like most of the others, failed, with debts owing to the extent of seven hundred dollars. In July, 1933, Mrs. Otto petitioned the superior court for the appointment of a receiver of the Olympia business. Later, in the receivership proceedings, Mrs. Otto purchased the business, and soon thereafter she commenced the present action.

The evidence in the case is comprised in a statement of facts covering three hundred and twenty pages, to which are attached many exhibits. As may be expected, the evidence presents a very decided conflict both as to the cause of the trouble and also as to the relative property rights. The court's findings as to the separate or community character of the various properties are no more specific than our statement. There was a general finding that the parties had acquired the following properties, of the values as therein fixed: (1) Property known as 1031 North Fife street, valued at $2,500; (2) property known as 5210 South L street, valued at $2,000; (3) tract 10 of State Addition, valued at $2,000; (4) delicatessen business at Olympia, valued at $1,000; (5) a promissory note, secured by chattel mortgage, valued at $200; (6) stock in Pacific Savings & Loan Association, valued at $770; (7) 998 Quarterly Income Shares, valued at $1,407.18; (8) two life insurance policies, valued at $634 each.

In the interlocutory decree, the court awarded the wife a divorce on the ground of cruelty, and gave her the custody of the child. It also awarded to the wife

the three pieces of real estate above mentioned, the business at Olympia, and the promissory note, having an aggregate value of $7,700. To the husband was awarded the stock in the Pacific Savings & Loan Association and the Quarterly Income Shares, having an aggregate value of $2,177.18. The award to the husband was upon the condition, however, that the Quarterly Income Shares should be sold and from the proceeds thereof should be paid two years' premiums on the life insurance policy written on Mr. Otto's life, also a fee of five hundred dollars to his attorney, and the unpaid debts incurred by Mr. Otto in the Olympia business, which then amounted to several hundred dollars. The two life insurance policies were ordered to be rewritten for the benefit of the minor child, the premiums to be paid by the husband on one policy and by the wife on the other.

The cross-appellant now contends that, inasmuch as the divorce was awarded to her because of misconduct of the husband, it was inequitable to award to him any part of her separate property.

While the major part of the property may have been acquired through the separate means of the wife, there is substantial evidence in the record that funds earned by the husband contributed to its acquisition. There is also considerable evidence to the effect that Mr. Otto devoted years of his time to the conduct of the various businesses owned and operated by the parties.

Rem. Rev. Stat., § 989, provides as follows:

"In granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the conditions in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the chil-

dren, and shall make provision for the guardianship, custody, and support and education of the minor children of such marriage.''

Under this statute, the court is authorized to make disposition of both separate and community property. *Nelson v. Nelson,* 131 Wash. 646, 230 Pac. 819; *Jones v. Jones,* 140 Wash. 90, 248 Pac. 57; *Logan v. Logan,* 141 Wash. 62, 250 Pac. 641; *Leonhard v. Leonhard,* 147 Wash. 311, 265 Pac. 1118. While the circumstance of fault on the part of one party or the other is persuasive and is proper to be inquired into in making the division, it is of itself not controlling. *Fitzpatrick v. Fitzpatrick,* 105 Wash. 394, 177 Pac. 790. The requirement of the statute is that the court shall have due regard to the various elements specified therein, and, after an examination of the whole case, shall make an equitable distribution of the property. The fact, therefore, that the property may be wholly or in large part the separate property of the wife does not deprive the court of its power and right to make an equitable division of it.

In going over the path made by the record in this case, we get the distinct impression, as no doubt the trial court did, that Mrs. Otto at the present time has the superior business ability, and that she is much better equipped, financially as well as physically, than Mr. Otto is to make a successful living. By the decree, she has received the major part of the property, and what she has appears to be unencumbered and productive. What he has received, although liquid, is nevertheless subject to the payment of certain expenses which will reduce it by at least a third.

It is often difficult, and sometimes impossible, to determine the exact equities between parties with mathematical precision. Results must vary according to

the attendant circumstances. The statute with reference to the distribution of property in divorce cases enjoins upon the court the duty of making such disposition as shall appear just and equitable, having due regard to the merits and conditions of the parties. The difficulties confronting the court in the trial of this case are apparent from the record. It is also apparent that the court earnestly endeavored to make a division that would be just and equitable to both parties, under all the facts and circumstances presented. We find no compelling reason for disturbing its judgment.

Affirmed.

HOLCOMB, MAIN, MITCHELL, and MILLARD, JJ., concur.