[No. 28120. Department One. February 5, 1942.]

JOHN MILTON WITZEL, *Appellant,* v. CLARA I. WITZEL, *Respondent.*[1]

*James R. Chambers,* for appellant.

*Mifflin & Mifflin,* for respondent.

DRIVER, J.—Plaintiff brought this action for divorce, and the defendant wife cross-complained. The trial court entered findings, conclusions, and interlocutory order, adjudging both parties entitled to a divorce and specifying the manner in which their property should be divided. Plaintiff appealed.

Appellant and respondent intermarried September 12, 1936. Appellant, then forty-nine years of age, had previously been twice married and twice divorced. Respondent, who was fifty-five years of age, had been married and divorced once before. By prior marriages,

[1]Reported in 121 P. (2d) 943.

the wife had an adult child and the husband three adult children. No child was born of their marriage to each other.

Respondent had been living at Orting with her mother and her stepfather (the latter eighty-nine years of age), and she continued to reside with them for several months after the marriage. Appellant, a painter and decorator, stayed on in Seattle, although he worked at Orting some of the time and visited his wife on week ends.

In May, 1937, appellant and respondent's stepfather, Mr. Lynch, jointly purchased a dwelling house in Seattle (referred to at the trial as "the 18th Avenue house"), and their two families took up residence there, sharing the expenses of the composite household. This arrangement, as might well have been foreseen, did not prove satisfactory, and there was considerable disagreement and bickering, particularly between appellant and Mr. Lynch. In November, 1937, appellant went to California to work, and did not return until the following March. During that time, he made no contribution to his wife's support. Appellant again went to California in October, 1938, and respondent accompanied him. On their return to Seattle in April, 1939, appellant left respondent at the home of her mother, established his own residence elsewhere, and did not again resume the marital relation.

Appellant asserts that the trial court erred in two particulars: first, in granting respondent a divorce; and, second, in making an unjust and inequitable disposition of the property of the parties. Since appellant also was granted a divorce, and there is no cross-appeal, his first contention would seem to be of little practical moment. In his brief, appellant states that it is important "only as it affects the amount of property set aside to the respondent." We shall not, therefore, enter into

any detailed discussion as to who was at fault. The record discloses the accusations and the recriminations characteristic of contested divorce suits, but neither party charged the other with any serious misconduct. Appellant complained that respondent nagged him, made importunate demands upon him for money, and criticized his dress, his behavior, and his manner of driving the family automobile. On the other hand, respondent and her witnesses testified that appellant was indifferent and moody; that he sometimes pouted and would not speak to respondent when he came home; and that, on one occasion, when he took offense at something she had said to him, "He got up and left, and was gone for a week." Both parties and their witnesses seemed to be in agreement on one point, however, that the marital venture had definitely failed beyond possibility of redemption.

We do not think the evidence preponderates against the trial court's conclusion that both parties were somewhat at fault, and that each of them was entitled to a divorce. While an appeal such as this comes to us for a hearing *de novo,* yet the trial court's findings based upon conflicting testimony are entitled to great weight. *Hale v. Hale,* 76 Wash. 34, 135 Pac. 481; *Rogers v. Rogers,* 81 Wash. 502, 142 Pac. 1150; *Hughes v. Hughes,* 118 Wash. 262, 203 Pac. 376; *Taylor v. Taylor,* 8 Wn. (2d) 565, 113 P. (2d) 64.

Passing now to appellant's second contention: Did the lower court fairly divide the property of the parties? Rem. Rev. Stat., § 989 [P. C. § 7508], provides:

"In granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the conditions in which

they will be left by such divorce, and to the party through whom the property was acquired, . . . "

We have many times held that, in a divorce case, all the property, both community and separate, of both parties is within the jurisdiction of the trial court for division, and may be disposed of in such manner as the court may consider fair and equitable. A comparatively recent case is *Oestreich v. Oestreich,* 2 Wn. (2d) 72, 97 P. (2d) 655.

At the time of their marriage, respondent had no separate property other than about three hundred dollars in a savings account. Appellant testified that he then owned certain real property, seven hundred dollars to one thousand dollars in cash, and an automobile. All the real property was lost by tax foreclosure, and did not in any way enter into or augment the assets which the parties had at the time of the trial. Appellant's testimony with reference to his cash was vague and unsatisfactory. He stated that he had part of the money in a safety deposit box and part of it in a postal savings account, but postal savings records produced at the trial disclosed that he did not open such an account until about three months after the marriage; moreover, he could not say how much cash he had in the safety deposit box or when or in what amounts it was withdrawn. The automobile, a 1926 Cleveland, was used as part payment on another car, which, in turn, was traded in on the purchase of the 1937 Plymouth sedan which the parties possessed at the time of the trial. With the exception of these successive trade-ins, the purchase price of each of the two automobiles acquired after the marriage appears to have been paid with community funds.

The lower court found that, at the time of the trial, the parties owned the Plymouth sedan, certain real

property consisting of a dwelling house and lot in the university district in Seattle (appellant, in his testimony, valued it at two thousand dollars), subject to a mortgage "of $360 to $400," and the balance of a separate bank account, which respondent had prior to the marriage, in the sum of $260.79. The court, in its disposition of the property, turned the automobile over to the appellant, and gave the bank account and the real property to respondent, but did not allow her any alimony, attorney fees, or costs.

Appellant earnestly urges that he should share in the real property awarded to the respondent. It was acquired in the following manner: Appellant had paid five hundred dollars of his separate funds on the purchase price of "the 18th Avenue house" in Seattle, which, as we have stated, he, after his marriage to respondent, acquired jointly with her stepfather, Mr. Lynch. Appellant built a double garage on this property and otherwise improved it to the extent of about three hundred dollars, although how much of that amount represented his community labor and how much was materials purchased with his separate funds, the record does not definitely show. Mr. Lynch owned the university district property, and he sold or traded it to appellant for two thousand dollars, taking, as a part payment of eight hundred dollars, a conveyance of appellant's interest in "the 18th Avenue house" and a mortgage on the university district property for the balance of one thousand two hundred dollars. This mortgage was subsequently reduced, by installment payments of forty dollars a month, to three hundred and sixty dollars or four hundred dollars. The installments consisted of rent received for the property, amounting to $32.50 a month (less water charges and repairs), supplemented by appellant's community earnings.

The following quotation from its findings indicates that the trial court took into account, in addition to the origin, character, and extent of the property, certain other considerations:

"That the above-named plaintiff [appellant] is able-bodied, by occupation a painter and decorator, makes union wages when employed, and did not, upon the trial of this cause, produce a record of his earning subsequent to the separation of the parties occurring on April 17, 1939, or prior thereto; that since the separation of the parties on April 17, 1939, plaintiff as the result of litigation waged against one Dennis was enabled to and did recover the sum of $352.00 less costs and attorneys' fees incurred in connection therewith.

"That the defendant [respondent] is unable to work or labor at any gainful occupation or to perform other than household duties; that defendant is underweight, being approximately 94 pounds, is anemic and suffers from lack of nutrition, has low blood pressure, and has been under the care of a physician and will require medical treatment for the purpose of building up her health."

In fairness to appellant, it should be noted that he was left with outstanding debts amounting to one hundred and twenty-five dollars, and, he testified, his estimated average earnings amounted to "possibly $20 a week the year around"; furthermore, the physical condition of the respondent at the time of the trial was virtually the same as it had been when she married. However, considering all the factors having a material bearing on the problem as disclosed by the entire record, we conclude that the trial court's disposition of the property was just and equitable and should not be disturbed.

Judgment affirmed.

MAIN and BLAKE, JJ., concur.

STEINERT, J. (dissenting)—I think that the appellant should have been awarded the equivalent of one-half of the property involved and that the decree should be modified accordingly.

ROBINSON, C. J., concurs with STEINERT, J.