[No. 29611.   Department One.   August 3, 1945.]

EVANGELINE F. LUITHLE, *Respondent*, v. WALLACE A. LUITHLE, *Appellant*.[1]

*George E. Clarke,* for appellant.

*Clarence L. Gere,* for respondent.

[1]Reported in 161 P. (2d) 152.

STEINERT, J.—Plaintiff brought suit against the defendant for divorce on the ground of cruelty. The defendant cross-complained, seeking a divorce from the plaintiff on a like ground. Both parties requested the court to make a division and award of their propery, both separate and community. After a hearing, the trial court made findings of fact and conclusions of law and thereupon entered an interlocutory decree granting to the plaintiff a divorce and awarding to her a lump sum of money, certain household furniture and equipment and other personal property, support money for a specified number of months, the exclusive occupancy of the home for a definite period of time, and an attorney's fee; the remainder of the property was awarded to the defendant. From that decree the defendant appealed.

The parties to this action became acquainted with each other in September or October, 1943. Respondent, Evangeline F. Luithle, was at that time a widow, about thirty-four years of age, residing in the city of Everett. She had three children, the youngest of whom was fifteen months of age and the oldest nine years. The house in which she then lived was worth about thirty-five hundred dollars and had been purchased under a contract upon which she still owed fourteen hundred dollars. At the same time, she was receiving social security assistance in amounts ranging from thirteen dollars and fifty cents to fifteen dollars a month for each of her children and twenty-one dollars a month for herself, or a total monthly sum of approximately sixty-five dollars.

Appellant, Wallace A. Luithle, was a carpenter and builder, about forty-two years of age, who owned and occupied a house about eighteen blocks north of the city of Seattle. Living with him was his nine-year-old daughter by a former marriage. He also had a son, twenty-two years old, who was in the army. Appellant had been married twice before, his first wife having died, and his second one having been divorced. The house in which appellant was living at the time he met the respondent was a four-room dwelling, with a finished basement and inside garage,

and was then worth about fifty-seven hundred dollars. He also owned other real estate worth about twenty-three hundred dollars; war savings bonds in the amount of three thousand dollars; a real estate contract and a mortgage on which was owing to him a total amount of approximately fifty-four hundred dollars; three old automobiles valued at nine hundred ninety-two dollars; and miscellaneous carpenter tools, building material, and household furniture and equipment, of the estimated value of seventeen hundred dollars. His total net worth was approximately nineteen thousand dollars.

Following upon their introductory acquaintance, appellant and respondent became seriously interested in each other and a courtship soon developed. Two months later, on November 15, 1943, they were united in marriage.

Respondent gave up her Everett residence and, with her three children, moved into the house occupied by the appellant and his daughter. Respondent testified that, under the provisions of the social security act, she was compelled, upon her marriage, to relinquish permanently the monthly amount of twenty-one dollars which she had theretofore been receiving from that source for herself, and it is undisputed that she has been permanently deprived of that amount. After the marriage, appellant continued his vocation of building houses on vacant lots owned by him and then selling the completed houses on contract.

Early in 1944, respondent sold her Everett home for thirty-five hundred dollars, from which she received a down payment of six hundred dollars, and the balance of the sale price was made payable in monthly installments to be applied on her outstanding purchase contract. She testified that she was opposed to making this sale and that she acquiesced therein only because of appellant's urgent request. A good portion of her furniture was moved into a house which appellant was constructing at the time, and a little later the house was sold as thus furnished. There is a serious dispute in the evidence as to whether appellant ever repaid her for this furniture, he contending that he had, and she as strongly insisting that he had not.

For a short while after the marriage, the parties seemed to be happy, at least congenial with each other. They continued to go out to dances together, as they had before, deriving considerable enjoyment therefrom. Unfortunately, however, their connubial happiness did not last very long. Discord and altercations soon arose, and from that time on an estrangement rapidly developed. Although, as stated by the trial court, they were both "very fine people," with no bad habits, nevertheless they quite early became very much dissatisfied with their lot.

According to the allegations of respondent's complaint, appellant was possessed of an ungovernable temper and frequently subjected her to both mental and physical cruelty. The trial court found that, almost from the beginning of their married life, appellant began to exhibit a quarrelsome and sulky attitude, finding fault with the respondent and her children, and later angrily threatening her with physical violence.

Appellant vigorously denied any misconduct on his part, particularly with reference to any act or threat of physical force. In explanation of a single occurrence testified to by the respondent, appellant described how upon that occasion the respondent in a fit of anger had struck him and, when he tried to hold her, had seized and hurled a pan which, narrowly missing him, broke a light fixture, scattering the glass upon the floor; then, fearing that she would break all the windows in the house, he took hold of her by the shoulders until she quieted down.

In justice to the appellant, we are constrained to say that, after reading the full record, we do not believe that he used any physical violence upon the respondent. Rather do we think that the underlying cause of the trouble between the parties was, as stated by the trial judge in his oral decision at the conclusion of all the evidence, that the appellant "was dissatisfied with the fact that he had a wife with these three children," and felt that they were a burden upon him.

It appears from the evidence that appellant frequently found fault with the respondent and particularly exhibited

his dislike for the children by refusing to mingle with them during his hours at home. However, the only complaint which he, in his testimony, made against the respondent was that she was dissatisfied with living in the vicinity of Seattle and wanted to go back to Everett; he had no fault to find with the manner in which she took care of the home or treated his own little daughter.

The strained relation grew increasingly worse and reached its climax on or about March 14, 1944, when respondent instituted the present action. The marriage venture had lasted just four months. It is inferable from the record that ever since the commencement of the action respondent and her three children have continued to occupy the home, near Seattle, while appellant has been living alone in the city of Edmonds, where he is building a house upon a lot which he owns; he maintains his daughter elsewhere. This temporary adjustment was probably the result of an order made by the court pending the trial of the case on its merits.

At the conclusion of the trial, the court orally announced its decision granting the divorce to the respondent, and awarding to her certain monetary and other general relief. Thereafter, at a special hearing the court made a detailed division and disposition of the personal property, particularly the household furniture and equipment. The allowances which the trial court in its findings, conclusions, and interlocutory decree made to the respondent are in substance, as follows: seven hundred fifty dollars in cash; fifty dollars a month for a period of eighteen months; the occupancy of the house near Seattle, free of charge, for a like period of eighteen months beginning August 1, 1944; a considerable portion of the household furniture and equipment then in the home; a 1934 Ford automobile; and an attorney's fee of one hundred fifty dollars. The remainder of the property, real and personal, was awarded to the appellant.

The theory upon which these allowances were made by the court was that appellant was at fault; that the community property of the parties was of small amount; that

respondent had disposed of her home and furniture in Everett; that she had permanently relinquished her claim for social security to the extent of twenty-one dollars a month; that she was not qualified, nor in a position, to engage in business employment; that she was handicapped by the necessity of taking care of three little children and, besides, was in a weakened physical condition, largely due to an "ingrown" goiter and worry over the marital difficulties; and that the amount of money awarded to her and the privilege of occupying the home temporarily were necessary in order to enable her to rehabilitate herself; while, on the other hand, appellant, worth between seventeen thousand and nineteen thousand dollars, was gainfully employed in an established business and would be able to earn money in the future as he had in the past.

Although appellant has appealed from the entire interlocutory decree, he is not now contesting the action of the trial court in granting the divorce to the respondent. He himself desires that the bonds of matrimony be severed, and he is apparently satisfied with the result in that respect. His sole contention upon the appeal, as shown in his brief, is that the trial court erred in making any allowances whatever to the respondent out of money or property which was his separate property. His argument proceeds upon the assertion that the court failed to follow and be guided by Rem. Rev. Stat., § 989 [P.P.C. § 23-23], which reads:

"In granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the conditions in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children, and shall make provision for the guardianship, custody, and support and education of the minor children of such marriage."

We have had occasion innumerable times to construe and apply that section of the statute. Pages of citations will be found in the annotation to its text.

It is now accepted as a fundamental proposition that, in a divorce action, the court has complete jurisdiction

of all the property of the parties, whether community or separate, and may dispose of it in such manner as is equitable and just under all the circumstances. *Nelson v. Nelson*, 131 Wash. 646, 230 Pac. 819; *Leonhard v. Leonhard*, 147 Wash. 311, 265 Pac. 1118; *Bundy v. Bundy*, 149 Wash. 464, 271 Pac. 268; *Van Kleffens v. Van Kleffens*, 150 Wash. 685, 274 Pac. 708; *Otto v. Otto*, 178 Wash. 41, 33 P. (2d) 1074; *Jeffers v. Jeffers*, 199 Wash. 393, 91 P. (2d) 1005; *Oestreich v. Oestreich*, 2 Wn. (2d) 72, 97 P. (2d) 655; *Witzel v. Witzel*, 12 Wn. (2d) 371, 121 P. (2d) 943.

In *Fitzpatrick v. Fitzpatrick*, 105 Wash. 394, 177 Pac. 790, a pertinent quotation is made from the early case of *Webster v. Webster*, 2 Wash. 417, 26 Pac. 864, as follows:

"This language [as now contained in Rem. Rev. Stat., § 989] is comprehensive; it is an equitable division of the property rights of the parties that the court is authorized to make. . . . the parties shall bring into court all their property, and a complete showing must be made. Each party must lay down before the chancellor all that he or she has, and, after an examination into the whole case, he makes an equitable division. . . . The law does not require an equal division of the property, but a 'just and equitable' division, and as no general rule for a just and equitable division can be laid down, but each case must be adjusted according to its own merits and the particular circumstances surrounding it, the court investigates all the circumstances."

In the *Oestreich* case, *supra*, we summed up the holdings of this court on this particular subject, in the following statement:

"It has often been said by this court that, in a divorce action, all the property of the spouses, both community and separate, is brought within the jurisdiction of the court for disposal and may be disposed of in any manner that may be equitable and just, even to the extent of awarding it all to the wife."

In this case, it is true that the award made to the respondent was from property which almost entirely had been the separate property of the appellant. It is also true that no child was born to the marriage union of these parties. Those factors, while they are entitled to serious con-

sideration, do not constitute the sole or exclusive yardstick by which a "just and equitable" division is to be made. By the terms of the statute itself the court is enjoined to have regard to the conditions in which the parties will be left by the divorce, and we have always held that the necessitous condition of the wife and the financial ability of the husband are most important circumstances to be taken into consideration, together with all the other circumstances in the case.

In *Hale v. Hale,* 76 Wash. 34, 135 Pac. 481, this court answered the contention as here made by the appellant, in the following statement:

"Though most of the property involved was the separate property of the husband, it was the trial court's duty, regardless of that fact, to make such a division as to him appeared just and equitable, having regard to the merits of the respective parties and to the situation in which they are left by the divorce. [Citing cases.]"

In the case of *Underwood v. Underwood,* 162 Wash. 204, 298 Pac. 318, this court had occasion to consider the relative conditions of the spouses, upon divorce, and, although denying to the wife permanent alimony, did allow her temporary maintenance in addition to the property settlement. The reason for so doing was expressed in the following statement:

"But in view of the fact that it will require a reasonable period of time for appellant [the wife] to adapt herself to her present status, during which she will be compelled to give considerable care to the child, and in view of respondent's [the husband's] present earning capacity, we hold that he should be required to pay to the appellant, in addition to the property settlement made by the court, the sum of six hundred dollars as alimony, such payments to be made at the option of the respondent at the rate of fifty dollars per month."

Although the child referred to in that case was the offspring of the parties, the reason which was emphasized for making the allowance was the actual condition in which the wife would be left, in comparison to that of the husband.

In *Van Kleffens v. Van Kleffens,* 150 Wash. 685, 274 Pac. 708, the circumstances were in many respects similar to those involved here. In awarding to the wife approximately one third of property amounting to thirty thousand dollars or more, this court said:

"Although there are no children of the marriage, the condition in which the parties will be left is to be considered, the needs of the wife being of most importance."

In *La Gue v. La Gue,* 146 Wash. 473, 263 Pac. 600, the court, in view of the relative conditions of the parties, awarded to the wife property and alimony amounting roughly to five thousand dollars out of property valued at twenty thousand dollars, nearly all of which was the separate property of the husband.

In *Bartow v. Bartow,* 12 Wn. (2d) 408, 121 P. (2d) 962, which involved the question of alimony to be allowed to the wife, this court said:

"The criterion for the allowance of alimony depends on two factors: (1) the necessities of the wife; (2) the financial ability of the husband. *Holcomb v. Holcomb,* 53 Wash. 611, 102 Pac. 653; *Herrett v. Herrett,* 80 Wash. 474, 141 Pac. 1158."

In the case at bar, a component part of the allowances made by the court was an allotment for temporary alimony, and hence the criterion adverted to in the *Bartow* case, *supra,* was applicable. Aside from that, however, we are of the opinion that one of the criteria in making a property settlement between the parties is, likewise, the necessities of the wife and the financial ability of the husband, provided, of course, that, under all the attendant facts and circumstances of the particular case, the wife is entitled to any contribution at all from the husband.

We constantly have in mind that respondent's three children were not those of the appellant. While he may not be obligated to make provision directly for their care and support, the fact remains that respondent's duty in that respect is a vital factor in the consideration of the situation in which she is left in consequence of the divorce.

In a case involving somewhat the same situation, this court said:

"It may be that, when a man marries a woman with four dependent daughters, he does not become bound to do for the daughters all that he might cheerfully do for his own, yet he does assume a moral and a legal responsibility to assist the wife and mother to a reasonable extent in providing for her minor and dependent children properly, and in accordance with his means." *Motley v. Motley,* 117 Wash. 234, 200 Pac. 1099.

If a man assumes such obligation during marriage, we see no valid reason why the court, in making a just and equitable division of property and allowing temporary alimony in an action for divorce, may not take into consideration the necessities of the wife in that same respect.

We have hereinbefore referred to the fact that the respondent, on her marriage to the appellant, relinquished permanently her monthly allowance of twenty-one dollars under the social security act. Her loss in that respect will, over an expectant period of time, in large part counterbalance the award made to her in the interlocutory decree. Although it does not follow as a matter of law that appellant must be penalized by being compelled to assume the burden of that loss (*Peterson v. Peterson,* 113 Wash. 317, 194 Pac. 380), nevertheless, that was a very important factor to be considered by the court in resolving the relative situations of the parties after the divorce.

A wide discretion is vested in the trial court in making disposition of the property of the parties to a divorce action, and its determination will not be disturbed except for manifest abuse of discretion. As stated in *Werner v. Werner,* 18 Wn. (2d) 875, 138 P. (2d) 889:

"Decisions of the trial courts have uniformly been affirmed in divorce cases, where the court took into consideration all of the facts and circumstances as required by the statute."

We have carefully considered all the facts and circumstances connected with the case before us, and we do not find that the trial court abused the discretion necessarily

vested in it when it made the award and allowances above set forth.

The interlocutory decree is affirmed.

BEALS, C. J., JEFFERS, and GRADY, JJ., concur.

MILLARD, J. (dissenting)—To affirm the judgment in the case at bar is to place a premium on treachery and to announce that mercenary women who are clever enough to get one like appellant into their toils may be rewarded for their disloyalty with most of the savings of the victim.

Respondent lived with appellant approximately four months, a period of discord in the creation of which she was an active participant. Appellant and his ten-year-old daughter by a former wife have been expelled from their home by respondent, who is now occupying that home and using the furnishings which had belonged to the father and daughter for many years. Respondent was awarded $750 in cash, $50 monthly for eighteen months, and the right of occupancy free of charge for eighteen months of appellant's home, the value of which is $5400. Appellant must also pay costs and counsel fees of $150 for respondent. The furnishings of the home, certain items of household furniture and a 1934 Ford automobile, which respondent is to receive, should not be forgotten.

There has not been that just and equitable disposition of the property which the statute (Rem. Rev. Stat., § 989 [P.P.C. § 23-23]) requires the court to make when granting a divorce. Rather, the statute has been treated with contempt and our prior pertinent opinions in similar situations disregarded. Instead of placing both parties in as nearly as possible the same financial condition they were in prior to their marriage, which is the rule enunciated in *Bundy v. Bundy*, 149 Wash. 464, 271 Pac. 268, the wife, who added nothing except strife to the marital community during her four months with appellant, is placed in a far better financial position than when she married appellant. She is amply able to support herself or receive the same income she formerly received from the welfare fund; therefore,

I find in the record no good reason—moral or legal—for requiring the husband to pay the amount exacted by the decree. The award of $750 would more than compensate respondent for the four months of turmoil she enjoyed with appellant.