# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of | No. 54526-8-II |
| MICHAEL JAMES HILL, | |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| MARY LISA HILL, | |
| Appellant. | |

GLASGOW, A.C.J.—Michael James Hill and Mary Lisa Hill[1] separated in 2009 and signed a separation agreement in 2010, but they did not finalize their divorce until 2019. In the meantime, their initial dissolution proceedings were dismissed for want of prosecution. When the trial court entered the order dissolving their marriage in 2019, it incorporated the 2010 separation agreement. Lisa now argues that intervening circumstances render the original separation agreement unenforceable, and she asks this court to remand for the trial court to redivide the parties' property.

RCW 26.09.070(3) provides that when parties petition for a decree of dissolution after signing a separation agreement, the agreement remains binding so long as it was fair when it was executed. Lisa presents no evidence that this agreement was unfair when it was executed. We therefore affirm the trial court's final order of dissolution incorporating the 2010 separation agreement. We also award Michael costs and attorney fees on appeal.

---

[1] Because the parties share a last name, we refer to them as Michael and Lisa to avoid confusion.

FACTS

Michael and Lisa separated in 2009, and Lisa petitioned the court for a decree of dissolution. At the time, the parties had one minor son together. He is now an adult.

A.     The Separation Agreement

In December 2010, Michael and Lisa signed a separation agreement. The agreement provided that it was "a full final and complete settlement of all [Michael and Lisa's] property rights and obligations." Suppl. Clerk's Papers (SCP) at 75. Each party fully disclosed their properties, assets, and income, and each party was represented by independent counsel. The parties intended for the court to "approve this Separation Contract as fair and equitable at the time it was entered into," making it "enforceable." SCP at 76.

Under the terms of the agreement, "Either party *may* apply to the Superior Court of the State of Washington for a decree dissolving the marriage and granting all relief[] provided for in this Agreement." *Id.* (emphasis added). If either party applied for a dissolution decree, then the "Decree to be entered *shall* incorporate all the rights and obligations of the parties as set forth in this Agreement." *Id.* (emphasis added). "Although the terms and provisions of this agreement *may* be incorporated by reference into a decree of dissolution and become a part thereof, the agreement itself shall survive entry of any decree of dissolution, and *shall be enforceable as any other contract*." SCP at 75 (emphasis added).

The agreement also provided, "In the event of any proceeding brought at law or equity to enforce any of the provisions of this agreement, the prevailing party shall be awarded reasonable attorney[] fees and costs and all expenses incurred." *Id.* Any modification or waiver of the terms

of the agreement needed to be "in writing and executed with the same formality" as the agreement. SCP at 76.

Although they signed the separation agreement, Michael and Lisa did not finalize their dissolution in 2010. In 2016, the Clallam County Clerk sent notice that the dissolution action would be dismissed for want of prosecution. In 2018, the trial court dismissed the case.

B.     Current Proceedings

Michael understood that he would be able to "walk into court" with the separation agreement and finalize the dissolution at any time and that it would be "a very simple process with no chance for either party to negotiate back and forth because that had already been done." Verbatim Report of Proceedings (VRP) (Jan. 13, 2020) at 192. When Michael went to finalize the dissolution in summer 2018, he was surprised to learn that the case had been dismissed. He said that he never received the 2016 notice of dismissal, which had been sent to his parents' address. Michael was informed that refiling the dissolution case would require renegotiating the parenting plan for the parties' then-17-year-old son, so Michael waited to refile until after his son turned 18 in 2019.

In 2019, Michael filed a new petition for a decree of dissolution. He asked the trial court to find that the marital community ended in 2009, when Michael and Lisa moved into separate households and separated their assets. Michael also asked the trial court to enter a decree of dissolution that incorporated and enforced the 2010 separation agreement.

In response, Lisa asked the trial court to "find that the Separation Agreement signed by the parties in 2010 did not address future property accrual by the parties and that the Court has authority to divide the parties' property, both community and separate, without regard to the terms

of such an agreement." Clerk's Papers (CP) at 24. She relied on *In re Marriage of Logan*, 141 Wash. 62, 250 P. 641 (1926), a 1926 case where the Washington Supreme Court determined it had the authority to redivide the parties' property after "there had been a divorce case filed, a separation agreement signed, the divorce case was dismissed, and then one of the parties approached the Court for relief in a subsequent case asking for the enforcement of the terms of the agreement signed in the prior case." CP at 25. Lisa disagreed that the marital community had ended in 2009, "as [the parties] continued to be married thereafter," and she claimed that she and Michael "continued to share households from time to time through 2016, when [they] attempted to reconcile." SCP at 54.

The parties proceeded to a bench trial. Lisa testified that when she signed the separation agreement, she had an attorney who helped her review and understand the document. She said that she signed the agreement voluntarily and understood it to signify a final separation between herself and Michael. She agreed that she had "indicated it was fair and equitable" when she signed it. VRP (Jan. 13, 2020) at 43.

However, she also testified that she would spend several nights per week with Michael in 2016 and 2018 and that they were attempting to reconcile their marriage. She said that she would introduce Michael as her husband and "everyone knew" they were still married. *Id.* at 220. According to Lisa, although she periodically wanted to finalize the divorce, Michael asked her not to and said that he still loved her. Now that the dissolution was being finalized in 2019, Lisa asked the trial court to redivide the property, such as the house and Michael's pension, based on its 2019 value rather than its 2010 value.

Michael denied that Lisa ever lived with him after the separation or spent the night at his house on a regular basis, and he said that they never reconciled. Michael's close friends and family testified that they had never seen Lisa at Michael's house and that they would be surprised if there was ever any reconciliation between the two.

According to Michael, they did not finalize the divorce before 2018 so that Lisa could remain on his health insurance. Michael asked his attorney to include a provision in the separation agreement giving him the option to continue providing medical insurance for Lisa and her two minor daughters. *See* SCP at 77 ("Michael will use his best efforts to allow Lisa to remain[] insured under his health care insurance through his employer pending dissolution of their marriage."). He explained, "I did not feel like it was in the best interest of my son to cut her off my insurance and her providers that she had been seeing regularly." VRP (Jan. 13, 2020) at 161. Although the agreement required Lisa to reimburse Michael for her portion of the monthly premiums, she never did.

## C.     Trial Court's Ruling

After the trial, the court issued a memorandum opinion, explaining that the agreement provided for any property acquired by Lisa or Michael after their separation to be their separate property. It also found, "No evidence was presented of Lisa and Michael having acquired any property together since separating." CP at 35. The trial court recited RCW 26.09.070(3), which states that a separation agreement is binding if it was fair at the time of its execution, and concluded, "Here the parties agreed that at the time of the execution of the Agreement, that it was fair and equitable. No evidence was produced at trial by either party to dispute that assertion, or that either party had hidden assets from the other." CP at 36.

The trial court reasoned that unlike the parties in *Logan*, it did not find that Michael and Lisa had reconciled and, regardless, "reconciliation is irrelevant to the issue of the validity of the Separation Agreement" because "[a] reconciliation of the parties on its own, does not invalidate a decree of legal separation in Washington." CP at 38 (citing *In re Marriage of Moody*, 137 Wn.2d 979, 990, 976 P.2d 1240 (1999)). The trial court also noted that *Logan* was decided prior to the enactment of RCW 26.09.070.

The trial court concluded that the 2010 agreement was "fair and equitable at the time it was made" and found "no reason to engage in a re-division of property." CP at 39. It also concluded that the trial was "necessary to effectuate the specific performance and/or enforcement of the Agreement," so Michael, as the prevailing party, was entitled to costs, reasonable attorney fees, and expenses incurred, such as time off work, under the agreement. CP at 40.

The trial court then entered findings and conclusions. It found that "[t]he marital community ended on November 10, 2009. The parties stopped acquiring community property and incurring community debt on this date." CP at 12 (emphasis omitted). It concluded, "The parties should be ordered to comply with the terms of the contract" they signed in 2010, and the divisions of all property "described in the final order is fair (just and equitable)." *Id.* The order stated, "The spouses must comply with the terms of the separation contract signed on December 17, 2010." CP at 7 (underline omitted). All property was divided as described in the separation contract.

Lisa appeals the final order and the trial court's findings of fact and conclusions of law.

ANALYSIS

I. ENFORCEABILITY OF THE 2010 SEPARATION AGREEMENT

Lisa argues that the trial court erred by upholding the separation agreement because it was "signed within the context of a divorce that was never granted, was later dismissed, and was then re-filed." Br. of Appellant at 4. She contends that the court is not bound to enforce the agreement under CR 2A because the agreement related to a case that was dismissed, and she contends that the court is not bound by RCW 26.09.070(3) because "[o]nce that proceeding was dismissed . . . , the basis for enforcing the agreement under RCW 26.09.070 should have gone with it." *Id.* at 7. Lisa asks us to follow *Logan*, hold that the trial court erred by enforcing the agreement, and remand for a redivision of the property. Lisa does not argue that the agreement was unfair at the time of its execution. We affirm.

A.      RCW 26.09.070 and Its Intersection with CR 2A and Case Law

In a proceeding to dissolve a marriage, "the jurisdiction and authority of the courts is prescribed by the applicable statute, the dissolution of marriage act, [chapter 26.09] RCW." *Moody*, 137 Wn.2d at 987. We have explained that when the legislature enacted RCW 26.09.070(3) in 1973, it gave separating parties greater latitude to divide their property independently of the courts. *See In re Marriage of Shaffer*, 47 Wn. App. 189, 193-94, 733 P.2d 1013 (1987).

Under the act, parties may enter into a written separation contract "upon their separation *or* upon the filing of a petition for dissolution of their marriage or domestic partnership, a decree of legal separation, or declaration of invalidity of their marriage or domestic partnership." RCW 26.09.070(1) (emphasis added). The parties may "elect to live separate and apart without any court

decree." RCW 26.09.070(2). If the parties to the separation contract "at the time of the execution thereof, *or at a subsequent time*, petition the court for dissolution of their marriage," then the contract "shall be binding upon the court unless it finds . . . that the separation contract was unfair at the time of its execution." RCW 26.09.070(3) (emphasis added).

In interpreting a statute, we first look to its plain meaning. *In re Dependency of E.M.*, 197 Wn.2d 492, 499, 484 P.3d 461 (2021). "[I]f the plain meaning of the statute is unambiguous, we end our inquiry." *Id.*

Nothing in the language of RCW 26.09.070 suggests that a separation agreement's validity depends on it being incorporated into a decree of dissolution within the same proceedings or within a particular amount of time. To the contrary, the parties do not even need to file a petition for a decree of dissolution or legal separation to enter into a valid separation agreement. RCW 26.09.070(1). They may do so "upon their separation," and they may "elect to live separate and apart without any court decree." RCW 26.09.070(1), (2).

Further, the act clearly states that if the parties wait and petition for a decree of dissolution "at a subsequent time," their separation contract "shall be binding" if it was fair when it was executed. RCW 26.09.070(3). The generality of the phrase "at a subsequent time" indicates that the legislature sought to encompass filings at *any* time subsequent to the signing of the agreement.

In determining the plain meaning of a provision, we may also consult "'other provisions of the same act in which the provision is found.'" *State v. Granath*, 190 Wn.2d 548, 552, 415 P.3d 1179 (2018) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002)). Differences between RCW 26.09.070 and other provisions of the dissolution of marriage act confirm that the legislature did not intend for the enforceability of separation agreements to

depend on the status of any associated proceedings. *Compare* RCW 26.09.070(3), *with* RCW 26.09.060(10)(c) ("A temporary order, temporary restraining order, or preliminary injunction . . . [t]erminates . . . when the petition for dissolution, legal separation, or declaration of invalidity is dismissed.").

Lisa argues that CR 2A and case law required the trial court to limit the application of the separation agreement to the then-pending dissolution action. All her arguments fail.

1.      CR 2A

The purpose of CR 2A is consistent with the plain language of RCW 26.09.070(3). CR 2A addresses agreements made "in respect to the proceedings in *a* cause," but its language does not condition the enforceability of an agreement on a particular resolution in any particular cause. (Emphasis added.) "Rather, the purpose of CR 2A is to insure that negotiations undertaken to avert or simplify trial do not propagate additional disputes that then must be tried along with the original one." *In re Marriage of Ferree*, 71 Wn. App. 35, 41, 856 P.2d 706 (1993). "This purpose . . . is not served by barring enforcement of an alleged settlement agreement that is not genuinely disputed, for a nongenuine dispute can be, and should be, summarily resolved without trial." *Id.*; *see also Condon v. Condon*, 177 Wn.2d 150, 157, 298 P.3d 86 (2013) ("The purpose of CR 2A is to give certainty and finality to settlements."). CR 2A aims to minimize the court's intervention once parties have settled, which is consistent with RCW 26.09.070(3)'s requirement that fair separation agreements remain binding.

2.      *Logan*

*Logan*, which was decided decades before RCW 26.09.070 was adopted, does not undermine the plain language of the statute either. "'In ascertaining the legislative intent in the

enactment of a statute, the state of the law prior to its adoption must be given consideration.'" *Chelan County v. Nykreim*, 146 Wn.2d 904, 926, 52 P.3d 1 (2002) (quoting *State ex rel. Madden v. Pub. Util. Dist. No. 1 of Douglas County*, 83 Wn.2d 219, 222, 517 P.2d 585 (1973)). However, "'where . . . a statute is plain and unambiguous, it must be construed in conformity to its obvious meaning without regard to the previous state of the common law.'" *Id.* (alteration in original) (quoting *Madden*, 83 Wn.2d at 222).

In *Logan*, the parties entered into a separation contract in 1910. 141 Wash. at 63. Their divorce action was later abandoned, and in 1916, the parties reconciled, "resumed their marital relations, and continued to live together . . . for a period of approximately 9 years, when they again became estranged and separated." *Id.* at 65. The Supreme Court held that any reference to a divorce action within the separation contract could only be a reference "to such a divorce action as was then within the contemplation of the parties, and cannot be construed as having any reference to or bearing upon a divorce action which might be commenced years later after such a long period of reconciliation [has] ensued." *Id.* at 69.

The court determined that the parties' prior contract was not binding on the court, and it cited an earlier statute which provided, "'In granting a divorce, *the court* shall also make such disposition of the property of the parties as shall appear just and equitable.'" *Id.* at 68 (emphasis added) (quoting REM. COMP. STAT. § 989). However, since RCW 26.09.070(3) was enacted, "the old rule allowing the court to disregard the property division made by the parties in their agreement if the division does not conform to the trial court's view of an equitable property division, no longer is appropriate." *Shaffer*, 47 Wn. App. at 194.

Since it was decided in 1926, *Logan* has only been cited five times—most recently by the Supreme Court in 1999. *Moody*, 137 Wn.2d at 988. There, the petitioner cited *Logan* in support of his argument that "his reconciliation with [his spouse], on its own, invalidated the decree and the property settlement agreement." *Id.* But the Supreme Court rejected this argument, summarily concluding that "*Logan* does not support [the petitioner's] argument." *Id.* at 989. *Logan* therefore does not undermine the plain language of RCW 26.09.070.

3.  *Estate of Nelson*

The Supreme Court has also rejected an argument that when dissolution proceedings terminate due to the death of one of the spouses, the related property settlement agreement becomes void. *In re Estate of Nelson*, 85 Wn.2d 602, 609, 537 P.2d 765 (1975). Lisa argues *Nelson* nevertheless acknowledges that "surrounding circumstances may operate to invalidate an agreement" and claims that "the circumstances of this case, to include the attempts at reconciliation, the extended continuation of the marriage, and the dismissal of the underlying divorce action, show that the conduct of the parties operated to invalidate the agreement." Reply Br. of Appellant at 4.

What *Nelson* actually says is that "contracts disposing of property upon marital separation survive the death of one of the parties *unless the contract itself or the surrounding circumstances show it was not intended to*." 85 Wn.2d at 609 (emphasis added). Nothing in Lisa and Michael's separation agreement or the surrounding circumstances shows that the parties intended for their agreement to become void if the pending dissolution proceedings were not finalized or revived within a certain amount of time. Rather, the agreement expressly contemplated that Michael would keep Lisa on his health insurance "pending dissolution of their marriage." SCP at 77.

11

Moreover, the *Nelson* court explained that "the agreement, if binding, was not simply an adjunct of the dissolution litigation, but constituted a separate and distinct contract." 85 Wn.2d at 609. It would be "inconsistent" with RCW 26.09.070 "to tie a contract to the outcome of court proceedings which in no way conditions itself on them." *Id.* at 610. Although *Nelson* is factually distinguishable because it addresses the death of a party, its reasoning is consistent with treating a separation agreement as binding regardless of whether any associated dissolution proceedings remain, unless the agreement or surrounding circumstances provide otherwise.

In sum, none of the other sources of law that Lisa relies on requires us to ignore the plain language of the modern separation agreement statute.

B.      Michael and Lisa's Separation Agreement

Under current law, "the only question for a trial court reviewing a separation agreement is: was the agreement unfair when it was executed?" *Shaffer*, 47 Wn. App. at 194; *see also In re Marriage of Yearout*, 41 Wn. App. 897, 901, 707 P.2d 1367 (1985). "If the agreement is not unfair, the parties will be held to have waived their right to have the court determine a just and equitable division of the property." *Shaffer*, 47 Wn. App. at 194 (internal quotation marks omitted). Lisa does not argue on appeal that the separation agreement was unfair when it was executed. Thus, there is no basis to reverse the trial court's adoption of the separation agreement's terms.

This resolution is consistent with the terms that the parties agreed to in 2010. Their separation agreement required that any decree dissolving the marriage "shall incorporate all the rights and obligations of the parties as set forth in this Agreement." SCP at 76. It also stated that "the agreement itself shall survive entry of any decree of dissolution, and shall be enforceable as

any other contract." SCP at 75. It was therefore proper for the trial court to enforce the 2010 agreement by incorporating its terms into the dissolution decree.

## II. COSTS AND ATTORNEY FEES

Michael asks this court to award him appellate costs and attorney fees under the terms of the separation agreement. Lisa argues that the agreement only provides for costs and attorney fees in proceedings brought to enforce the agreement and Michael's dissolution filing "cannot reasonably be construed to be a proceeding to enforce the provisions of the agreement. At best, it is a proceeding in which Michael asked the trial court to adopt the terms of the agreement rather than enforce them." Reply Br. of Appellant at 7.

A party may recover attorney fees where permitted by contract. *Bloor v. Fritz*, 143 Wn. App. 718, 746-47, 180 P.3d 805 (2008). "Our primary goal in interpreting a contract is to ascertain the parties' intent." *Id.* at 746.

Michael's petition asked the trial court to incorporate the separation agreement into a final dissolution order. The agreement states that the prevailing party should be awarded all reasonable fees, costs, and expenses incurred "[i]n the event of *any* proceeding brought at law or equity to enforce *any* of the provisions of this agreement." SCP at 75 (emphasis added). This broad language suggests that the parties intended the provision to be liberally applied.

The agreement allowed for either party to petition for a decree dissolving the marriage and stated that if a party made this application, then "[t]he Findings, Conclusions and Decree to be entered shall incorporate all the rights and obligations of the parties as set forth in this Agreement." SCP at 76. When Lisa contested Michael's request to incorporate the terms of the agreement into a final dissolution decree, she forced Michael to go to trial to enforce this provision of the

agreement. *See* CP at 40 (trial court concluding that the hearing was "necessary to effectuate the specific performance and/or enforcement of the Agreement"). Lisa continues to contest the incorporation of the agreement's terms on appeal. Thus, we award Michael costs and attorney fees pursuant to the agreement.

CONCLUSION

Lisa presents no evidence that the 2010 separation agreement was unfair when it was executed. We therefore affirm the trial court's final order of dissolution, including its incorporation of the separation agreement's terms. We award Michael costs and attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, A.C.J.

We concur:

Cruser, J.

Veljacic, J.

14