[No. 19853. *En Banc.* February 15, 1927.]

## HARRY S. NORMAN, *Appellant,* v. W. J. LEVENHAGEN et al., *Respondents.*[1]

[1] HUSBAND AND WIFE (18, 27, 76)—SEPARATE PROPERTY OF WIFE—RIGHTS OF HUSBAND'S CREDITORS—LIABILITY FOR COMMUNITY DEBT. Real property held by a husband under an executory contract of sale, and quit claimed by him to his wife, who had supplied all or the major portion of the purchase price out of her separate estate, was the separate property of the wife, and not subject to garnishment as community property in an action to recover a community debt contracted by the husband.

[2] SAME (18, 27, 76). An executory contract for the purchase of real estate by a community, being personal property, the husband's quit claim in good faith of the community interest to his wife, before any judgment lien is secured by a community creditor, makes it her separate property which such creditor cannot follow.

Appeal from a judgment of the superior court for King county, Hon. C. E. Claypool, judge *pro tempore,* entered November 24, 1925, upon findings in favor of the defendants, in an action of garnishment. Affirmed.

*Jas. A. Dougan,* for appellant.

*R. C. Hazen,* for respondent Augusta Levenhagen.

FULLERTON, J.—This is an appeal from a judgment entered in a garnishment proceeding. The appeal is before us upon the findings of fact made by the trial court; the contention being that the findings require a judgment contrary to that entered by the trial court.

The facts as found by the trial court are, in substance these: On May 10, 1924, and for some time both prior and subsequent thereto, the respondents, Walter J. Levenhagen and Augusta Levenhagen, were husband and wife, living together as such. On the date

[1]Reported in 253 Pac. 113.

given, Walter J. Levenhagen contracted to purchase certain real property situated in the city of Seattle, for a consideration of six thousand eight hundred dollars. At the time of the purchase, he paid on the purchase price the sum of eight hundred dollars in cash, assumed a mortgage which was on the property of three thousand five hundred dollars, agreed to pay five hundred dollars on or before February 10, 1925, and agreed to pay the remainder of the purchase price ($2,000) in monthly payments of fifty dollars each, beginning June 10, 1924. To acquire the money for the first payment, the respondent Walter J. Levenhagen gave his promissory note to a bank for that amount, securing the note by pledging certain diamonds, which were the separate property of Augusta Levenhagen. The pledge was subsequently foreclosed by the bank, and the note paid from the proceeds of the sale of the diamonds. On the remaining part of the purchase price Walter J. Levenhagen "made some payments, not to exceed $250.00." All the other payments made on the contract were made by Augusta Levenhagen from her separate funds.

On August 19, 1924, Walter J. Levenhagen conveyed his interest in the property to Augusta Levenhagen by a quit-claim deed, and subsequent to the execution of the quit-claim deed Augusta Levenhagen managed and dealt with the property as her separate property. On December 13, 1924, the appellant in this proceeding recovered a judgment against Walter J. Levenhagen personally, and against the community consisting of Walter J. Levenhagen and Augusta Levenhagen, in the sum of $547.04 on an indebtedness represented in part by a note of three hundred dollars given by Walter J. Levenhagen, as a "commission upon the sale of the above-described property." On June 10, 1925, Augusta Levenhagen sold the property to John Gerald and Nettie Gerald under a contract calling for instal-

ment payments, and on which there was a balance due the vendor more than sufficient to satisfy the judgment of the appellant.

Based on the facts found, the trial court made the following conclusions of law:

"That the quit-claim deed from Walter J. Levenhagen to Augusta Levenhagen, duly made, executed and delivered on the 19th day of August, 1924, conveyed to said Augusta Levenhagen the property therein described as her sole and separate property, and that said conveyance was *bona fide* and that said property was, therefore, not subject to the lien of the judgment obtained against Walter J. Levenhagen and the community composed of said Walter J. Levenhagen and Augusta Levenhagen, his wife. That the order to show cause issued herein should be dismissed and dissolved, and the writ of garnishment obtained herein should be discharged and dissolved and that the plaintiff should take nothing by virtue of said writ, and that the defendant Augusta Levenhagen shall have and recover from the plaintiff her costs and disbursements herein to be taxed."

The judgment followed the conclusions of law; the garnishments theretofore issued being quashed, and the garnishment proceedings dismissed.

[1] The question whether the fund derived from the sale of the property was subject to the community debt of the respondents depends upon the further question whether it was the community property of the respondents or the separate property of the respondent Augusta Levenhagen. If it is the property of the community, it is so subject, but if it is the separate property of Augusta Levenhagen it is not.

It is the settled doctrine of this court that the status of property, as to being community or separate, is to be determined as of the date of its acquisition. If the property is community or separate when acquired, it maintains that status until changed by the acts of the

parties composing the community, by the operation of law, or by facts working an estoppel. See *In re Brown's Estate,* 124 Wash. 273, 214 Pac. 10, where our prior cases so holding will be found collected.

It is the settled doctrine of this court, also, that an executory contract for the purchase of real property vests no title in the contract purchaser, either legal or equitable, until the contract is fully performed. *Schaefer v. Gregory Co.,* 112 Wash. 408, 192 Pac. 968; *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29; *In re Kuhn's Estate,* 132 Wash. 678, 233 Pac. 293.

Turning to the findings of fact made by the trial court, it is deducible therefrom that the contract price for the purchase of the land had not been fully paid prior to the time Augusta Levenhagen assigned her interest in the contract to the Geralds. Whether even then the contract price had been fully paid, or whether the contract purchasers were then entitled to a deed, does not appear from the findings, but it does appear that this is the earliest time it can be said that there was an acquisition of the property by the contract purchasers or either of them. But at that time Augusta Levenhagen was the sole owner of the interest under the contract. Not only had she paid the major portion of the purchase price due under the contract, but her husband had, prior thereto, vested such interest in the contract as he had to her by a quit-claim deed, and it must follow that she was the separate owner of the interest as against any person claiming under Walter J. Levenhagen, or under the community composed of herself and Walter J. Levenhagen. In other words, as against Walter J. Levenhagen, or the community composed of herself and Walter J. Levenhagen, she was the owner of the entire interest in the contract of purchase at the time of its transfer as her separate prop-

erty, and the same right of ownership followed and attached to the proceeds derived from the transfer.

· From the foregoing considerations, it must follow that the appellant has no claim against the fund received from the transfer of the contract of purchase, if the claim depends upon the subsequent acquisition of title to the real property under the contract. The contract debt upon which the judgment was founded was a community debt on which Augusta Levenhagen was not personally bound. It was Augusta Levenhagen, and not the community, who acquired the property. Hence the judgment never attached to the property as a lien.

If the judgment creditor has any right to the fund received from the transfer of the contract of purchase, it is because the sum of two hundred fifty dollars paid on the contract was from a community fund. But it is not our opinion that this payment vests in the judgment creditor any right in the fund. The interest of the community in the contract of purchase was at best only personal property, and was such at the time the husband conveyed his interest therein to the wife. The wife by that transfer acquired all of the interest of the community therein. The property then became her personal property, and it is not the rule that a creditor having a claim against a community and having no lien on the property may follow the transfers of community personal property into the hands of the spouse to whom the community may transfer it; unless, of course, the transfer is made for the purpose of defrauding the creditor. The exception, however, has no application here, since the court expressly found that the transfer was made in good faith.

We think we need not discuss the effect of the statute cited by the appellant (Rem. Comp. Stat., § 10575

[P. C. § 1446]) since it relates solely to the transfer of real property from the husband to the wife, or from the wife to the husband, and is without relation to the transfer of personal property. Nor is the rule of the case of *Heintz v. Brown*, 46 Wash. 387, 90 Pac. 211, 133 Am. St. 937, applicable to the situation here presented. The case presented an instance where title was acquired to real property, the purchase price of which was paid in part from community funds and in part from the separate fund of one of the spouses. The relative interest of the community and the spouse in the real property was involved, but here the question, as we have shown, involves an interest in a contract of purchase which had not then ripened into title.

The judgment is affirmed.

MACKINTOSH, C. J., PARKER, ASKREN, BRIDGES, MAIN, and MITCHELL, JJ., concur.

TOLMAN, J., concurs in the result.