[No. 29567. Department Two. July 13, 1945.]

E. P. WHITING, as *Administrator, Respondent,* v. CECIL ARMSTRONG *et al., Appellants.*[1]

*Arthur C. Bannon,* for appellants.

*Adam Beeler, B. H. Camperson,* and *E. P. Whiting,* for respondent.

SIMPSON, J.—Plaintiff, as administrator of the estate of Joseph C. Darsky, deceased, brought this action to recover

[1]Reported in 160 P. (2d) 1014.

possession of certain real property in the city of Seattle which was occupied by defendants.

Defendants resisted the action and claimed that on or about November 12, 1941, Joseph C. Darsky made an oral offer to devise by will to defendants all of his property of which he might be possessed at the time of his death. The consideration for the performance of the acts by Mr. Darsky consisted of all necessary work upon his house and yard, taking care of his living quarters, furnishing his meals, and doing his laundry on the part of defendants. In addition, it was claimed that defendants performed all of the services required of them by the agreement. Defendants further alleged that Mr. Darsky died suddenly and unexpectedly on October 15, 1943, without having executed his last will and testament. Defendants requested that the court enter a decree, carrying into execution the agreement made between them and Mr. Darsky.

The claims made by defendants were denied by plaintiff. The cause was tried to the court, sitting without a jury. Subsequent to the trial the court made findings of fact and conclusions of law and then entered a decree in favor of plaintiff. Defendants then appealed to this court.

Their assignments of error are: (a) In refusing to make and enter certain findings and conclusions proposed by appellants; (b) in making his findings of fact and conclusions of law and in the entry of its decree; (c) refusal to reopen the case and take additional evidence; and (d) in the misconduct of counsel for respondent.

■ Preliminary to a review of the evidence, we deem it proper to state a rule of law which is applicable to this case. The last statement of the rule was contained in *Widman v. Maurer,* 19 Wn. (2d) 28, 141 P. (2d) 135, which is as follows:

"To establish an oral contract to devise or bequeath property, the evidence must be conclusive, definite, certain, and beyond all legitimate controversy. *Resor v. Schaefer,* 193 Wash. 91, 74 P. (2d) 917; *Wayman v. Miller,* 195 Wash. 457, 81 P. (2d) 501; *In re Fischer's Estate, supra; Osterhout v. Peterson, supra; Thompson v. Weimer,* 1 Wn. (2d) 145, 95 P. (2d) 772; *Aho v. Ahola,* 4 Wn. (2d) 598, 104 P. (2d) 487;

*Allen v. Dillard,* 15 Wn. (2d) 35, 129 P. (2d) 813; *Dau v. Pence,* 16 Wn. (2d) 368, 133 P. (2d) 523."

The rule to which we have just referred is a rule by which the trial court is to weigh and consider the evidence of the various witnesses who testify, and, unless that rule has been substantially departed from and we can say that the evidence preponderates over the findings, the judgment will be affirmed.

Joseph Darsky and H. C. Armstrong, father of appellant Cecil Armstrong, became acquainted in 1909. They lived and worked together for some time. The friendship continued until the death of Mr. Darsky, October 15, 1943. Darsky owned property at 511 Frink boulevard in Seattle, a short distance from the home of Mr. and Mrs. H. C. Armstrong. The building upon the property contained two apartments, one on the first floor and the other on the second floor. Darsky became very fond of Cecil Armstrong, who was born in 1917. When Cecil Armstrong married in 1939, he moved into the upper apartment in the building owned by Darsky. He paid rental thereon at the rate of ten or twenty dollars per month.

It was testified to that, at the time appellants were married, Darsky said:

"I have no close relatives and I have no one to leave any of my stuff to. Who knows, I might leave it to the kids if I am treated all right."

Concerning the alleged contract, Mr. H. C. Armstrong testified:

"Q. Was there any subsequent conversation between you and Mr. Darsky on that same subject matter? A. Yes. Q. When was that, approximately? A. Oh, I couldn't state on the exact date of it. The conversations just grew and grew and grew and grew, daily, I would say, and weekly. As I would go there to the children's house, as the children would be down there, practically every time that we were there Joe was always upstairs and we people would visit, or he take us down there to his place, and the conversations just continued to grow. And the time he stated the fact that he

wanted—he finally said if the children do thus and so that he would do thus and so by them, until finally, I can't remember the exact date."

H. C. Armstrong then testified that Darsky afterwards stated, "I will leave this house and my belongings to them," and that the statement was repeated by Darsky as late as the Tuesday before he died on a Friday.

The above testimony was given in the court on October 17, 1944. On the next day the witness stated that appellants "agreed to abide by and perform the things that Joe had outlined in his requests, and they had agreed and accepted Joe's request." He also stated that the services to be performed by appellants consisted of furnishing meals to Darsky, his care when he was sick, assisting him in the conduct of his business, doing his washing and ironing, and the care of the apartment and lawn. It was further stated that appellants performed the duties imposed upon them by Darsky. Appellant Jean Armstrong cared for Darsky at one time when he was ill and frequently served him meals.

The evidence developed the fact that Darsky was never satisfied with the conduct of appellants. The dissatisfaction, however, did not concern the services performed under the alleged contract, but related to the personal habits and actions of appellants.

The evidence of Mrs. Hazel Armstrong, mother of appellant Cecil Armstrong, corroborated that given by her husband. Several other witnesses gave evidence to the fact that Darsky on several occasions had voiced his appreciation and regard for appellants and had stated that he was going to leave them his property.

Appellants testified that they made certain improvements on the property. The improvements consisted of the installation of an automatic hot water heater, new lighting fixtures in the bed- and bathrooms, and the converting of a small pantry into a kitchen nook. They further stated that they put lights in the basement, in the coal bin, in the living room and kitchen, and in the laundry room; that before they moved in they cleaned the house thoroughly and

painted it on the outside. They contended that they kept the hedge clipped and the lawn mowed during the time they occupied the apartment.

The material portion of the evidence produced by the plaintiff is as follows: Lillian Shippy testified that she had been acquainted with Darsky since 1918 and took care of his home from 1927 until 1933. She stated that she went to Darsky's home on Frink boulevard three times each week and that her work consisted of running the vacuum cleaner over the rugs, washing the dishes, preparing his dinner, and laundering his clothes. She also did his fruit canning, the last canning being done on the Sunday before he died. Relative to a conversation between Mrs. H. C. Armstrong and herself, the witness stated:

"A. Mrs. Armstrong, Sr., said that all Joe's brothers and sisters were dead and the nephews and nieces were not entitled to anything, that she was damned if they were going to get it. Q. And what else did she say? A. She said they —Mrs. Armstrong, Sr.—said she had destroyed the letters or addresses of the nephews and nieces."

It is admitted that Darsky was of keen intellect, that his health was good, and that he worked up until a day or two before he died.

At the conclusion of the taking of the evidence, the court made an oral decision, in which he reviewed at length the testimony presented in the case. He referred to the witnesses who testified for appellants other than H. C. Armstrong and wife, and then said:

"The mere statement, however, by the decedent indicating that he intended to either convey or pass by will his property to the defendants here is not proof of a contract on his part so to do. It is evidence which is admissible as relevant, whether made before the date of the alleged contract or after it, as indicating the intention of the person who is supposed to have made the statement, but by itself it does not prove a contract."

Speaking of the testimony given by Mr. H. C. Armstrong, he said:

"At the close of the first day's testimony Mr. Armstrong had not proceeded further than to state what the offer was.

On the next day counsel recalled him and went forward with his testimony leading to the question of whether there was an acceptance by the defendants of this offer.

"In that testimony Mr. Armstrong, Sr., testified that the children, that is, meaning the defendants here, agreed to abide by and perform these things generally outlined and agreed upon, and that Darsky was going to deed the property over rather than give it by will, and that this took place at the dinner referred to; that the defendants were to feed Darsky, make him a member of the family, care for him when sick, assist him in the conduct of his business and do the washing, take care of his apartment, the lawn and the house.

"On cross-examination Mr. Armstrong was unable to fix the time of the agreement other than that it happened in either '41, '42 or '43.

"The rule, gentlemen, is that in order to sustain over the bar of the statute of wills and the statute of frauds a parol agreement to make a will to devise real property the evidence has to be clear, cogent and convincing that the contract has been entered into and performed.

"It is my conclusion, gentlemen, that the evidence does not rise to that standard, that I cannot under this evidence find, while there are many things that would suggest such a relationship, that the defendants here upon their cross-complaint have sustained the burden that the law places upon them to prove such a contract."

We are in full accord with the conclusion reached by the trial court. The evidence given by the witnesses who testified for appellants is not of that positive and convincing nature necessary to prove a contract such as that claimed by appellants. True, Mr. Darsky did make many statements that he had a great friendship for appellants and Cecil Armstrong's parents and that he intended to leave his property to them, but there is no definite proof which shows the terms of the oral agreement. Moreover, if it be assumed that there was a contract, it is apparent that appellants did not comply with its terms as testified to by H. C. Armstrong. Jean Armstrong did not furnish meals to Mr. Darsky, nor did she do his laundry; and it is quite evident that she did not keep his apartment in order.

We are convinced that the trial court reached the proper conclusion. For that reason, we affirm the judgment.

BEALS, C. J., BLAKE, ROBINSON, and MALLERY, JJ., concur.