[No. 31265. Department Two. October 5, 1950.]

VIRGIL A. BURCH, *Appellant,* v. ZADA BURCH RICE *et al., Respondents.*[1]

[1]Reported in 222 P. (2d) 847.

*Harold M. Gleeson*, for appellant.

*Keith, Winston, MacGillivray & Repsold*, for respondents.

SIMPSON, C. J.—Plaintiff instituted this action against defendants for the purpose of securing a decree declaring him the owner of a one-half interest in a restaurant and for an accounting. At the conclusion of the trial, the court entered findings of fact and conclusions of law. Thereafter, a decree was entered dismissing plaintiff's action and confirming title to the property and business in defendants. Plaintiff then appealed to this court. His assignments of error, seventeen in number, call in question the findings of fact and conclusions of law, and challenge the correctness of the decree.

We shall summarize the history of the business venture and the evidence produced by the parties to this action. The property is a restaurant, known as Mother's Kitchen, located at West 24 Riverside in Spokane. The restaurant was acquired by respondent's parents, Lewis T. and Grace E. Williams, in 1926. At that time, it was in a small room ten by fifteen feet, and had but seven or eight stools for customers. Shortly thereafter, the size and accommodations were increased by adding a small bedroom and a fourteen by twenty-four foot addition to the kitchen. In 1933, the restaurant could accommodate about thirty-two persons. Respondent was employed by her mother in late 1928 or the early portion of 1929, and continued her employment for a greater portion of the time until 1946. May 19, 1930, respondent received a bill of sale to the restaurant from her

parents. The bill of sale, recorded May 24, 1930, recited a purchase price of one thousand five hundred dollars, consisting of cash in the sum of $710, and the assumption of obligations in the amount of $790. December 7, 1932, appellant and respondent were married. At the end of the year, they took over the management of the restaurant. During the time appellant and respondent lived together, the business property was improved. New booths, cabinets, counters, refrigeration and ice-making machinery were installed, as were facilities for the dispensing of beer. The kitchen was renovated by laying new floors, the purchase of new stoves, and the installation of a sink. The front was modernized. Two restrooms were added. The dining room was enlarged. A basement was dug and a steam boiler installed. The parties were without resources in 1933. They did not have a bank account until respondent opened one in her own name in 1934 or 1935. Appellant was not authorized to draw checks on the account. All licenses for conducting the business were in respondent's name, doing business as Mother's Kitchen.

Appellant's evidence showed that he performed most of the work of remodeling at a cost of fifteen thousand dollars. The evidence introduced by respondent showed that the improvement placed on the property was by herself, and amounted to between three and four thousand dollars; that appellant never put any money into the enterprise and did very little of the work in remodeling and rebuilding the restaurant. In 1935, the parties secured a lease from the owners of the real property upon which the restaurant stood, for a period of four years, with an option to purchase. Respondent exercised this option in 1939.

In December, 1936, respondent started divorce proceedings. At this time a property settlement between them was drawn and signed by each of them. Under this agreement, the appellant was to receive some mining claims, all his tools, a car, a truck, and fifty dollars a month from respondent. On the other hand, appellant transferred to respondent Mother's Kitchen, she assuming the indebtedness of the

business.  The agreement, signed and acknowledged December 23, 1936, reads:

"THIS AGREEMENT, made and entered into this 23rd day of December, 1936, by and between Zada Burch, hereinafter called first party, and V. A. Burch, hereinafter called the second party, WITNESSETH:

"WHEREAS, the parties hereto are husband and wife and disagreements have arisen between them which makes it seem advisable to have a full and complete property settlement between the parties.

"Now, THEREFORE, the first party hereby sells, transfers and sets over to second party all her interest in the 1934 Chrysler automobile belonging to the parties hereto, and all her interest in the 1929 G.M.C. truck belonging to the parties hereto, and all her interest in the mining claims in the Clearwater National Forest in the State of Idaho, and hereby sells to second party all plumbing, carpenter and blacksmith tools now owned by the parties hereto, and further agrees to pay to second party the sum of Fifty ($50.00) Dollars per month for a period of one year beginning on January 1, 1937.  In the event that first party sells the restaurant hereinafter mentioned, she agrees to pay out immediately in cash any balance due on the payments last above mentioned.

"In consideration of the above, second party sells, assigns, sets over and transfers unto first party all other property of every kind, character and description belonging to the parties hereto, more specifically including that said restaurant known as Mother's Kitchen, situate at West 24 Riverside Avenue, Spokane, Washington, but first party assumes and agrees to pay all indebtedness now due or owing in connection with said restaurant business.

"It is understood between the parties hereto that they have a claim against Brown-Johnson Company in the sum of One Hundred ($100.00) Dollars and in the event said claim is collected by second party, he shall turn the proceeds thereof over to first party.

"It is understood between the parties hereto that this is a full and complete settlement of all property rights between the parties hereto and in the event that either party hereto shall institute an action for divorce or separate maintenance against the other party hereto, that neither party hereto shall claim or demand any suit money, alimony, or attorneys fees in such action for divorce or separate maintenance.

"It is further understood and agreed between the parties hereto that any property hereafter acquired by either party

shall be the sole and separate property of the party so acquiring it, free and clear of any claim of the other party hereto.

"IN WITNESS WHEREOF, the parties hereto have set their hands the day and year first above written.

Mrs. Zada Burch
First Party
V. A. Burch
Second Party"

On New Year's Eve, they were reconciled and lived together at Mother's Kitchen for about six months, at which time the respondent commenced another divorce proceeding. An interlocutory decree was entered October 7, 1937, which did not change the status of Mother's Kitchen. After their separation in June, 1937, appellant returned to the restaurant to pick up some of his belongings. At this time, respondent gave him a check for five hundred dollars, which she testified was a lump sum payment of the money provided for in the settlement. This check was noted "C. E. Burch account." It was admitted by both that they owed C. E. Burch five hundred dollars, but respondent claimed that she had previously given appellant the money to pay the debt which he had not done, so that this check was marked to relieve respondent of any further liability. On the other hand, appellant testified that nothing was said of the agreement when he received the check, but that it was given to pay the debt to his father.

In January, 1947, respondent sold the business for twenty-five thousand dollars to the other named defendants. The total selling price for both the land and business was fifty thousand dollars.

Appellant takes the stand that the business was community property and that, not being disposed of in the decree of divorce, it became common property. He argues further that, if it was not community property, the community efforts so greatly expanded the business after 1933 that it became community. He also contends that the property settlement was of no effect after the reconciliation. On the other hand, the respondent contends that the bill of sale to

her is conclusive, showing that the business was separate property, and that the presumption is that it remained seperate property; also, that, if the appellant did have any interest in the property, the settlement agreement resolves all questions in her favor.

The rule is well settled in this state that the status of property as community or separate is to be determined as of the date of its acquisition, and that if it is separate property at that time, it will remain separate property through all of its changes and transitions as long as it can be traced and identified; and, further, that its rents, issues and profits remain separate property. *Norman v. Levenhagen,* 142 Wash. 372, 253 Pac. 113; *DuPont de Nemours & Co. v. Garrison,* 13 Wn. (2d) 170, 124 P. (2d) 939; *In re Dewey's Estate,* 13 Wn. (2d) 220, 124 P. (2d) 805.

It is equally well settled that, if the community makes improvements upon the separate property enhancing its value, the community is entitled to a lien on the separate property to the extent of the improvements so placed by the community. *Jacobs v. Hoitt,* 119 Wash. 283, 205 Pac. 414; *Salisbury v. Meeker,* 152 Wash. 146, 277 Pac. 376. However, we do not have to determine the question to which we have just referred in this case, because of our conclusion relative to the property settlement. The intention of the parties determines whether the property settlement agreement is to be considered as a final adjudication of their rights and property.

The rule to be followed was announced by this court in *In re Garrity's Estate,* 22 Wn. (2d) 391, 156 P. (2d) 217:

"In ascertaining the intention of parties to a written agreement, we must look to the wording of the instrument itself as made by the parties, view it as a whole, and consider all of the circumstances surrounding the transaction, including the subject matter together with the subsequent acts of the parties to the instrument. Courts will give to words in a contract the ordinary or common meaning. A liberal construction will be given to contracts in order that they may be given effect and to carry out the intention reflected therein. [Citing cases.]"

The question presented in the case at bar has received the attention of this court in *Logan v. Logan,* 141 Wash. 62, 250 Pac. 641. In that case, it appears that the Logans were married in 1881. They accumulated a large estate. In 1910 they became estranged, and agreed to separate and divide their property. The agreement was reduced to writing and deeds were delivered to each other in accordance with the agreement. The divorce action was never brought to trial and, in 1916, the parties were reconciled and lived together until 1925, when they again separated.

In the trial of the action for divorce, the court awarded Mrs. Logan ten thousand dollars out of the property obtained by Mr. Logan by the early property settlement. This court affirmed the judgment and in so doing stated:

"We do not regard our views here expressed as in the least impairing the effect of the separation and property division contract in so far as that contract and the deeds made in pursuance thereof changed the property from community to separate property. We do hold, however, that, in so far as that contract contained an agreement with reference to any prospective divorce action, it had reference only to such a divorce action as was then within the contemplation of the parties, and cannot be construed as having any reference to, or bearing upon, a divorce action which might be commenced years later, after such a long period of reconciliation as ensued, drawing in question alleged causes for divorce arising years after such reconciliation."

We do not, however, consider that the above case is determinative of the questions presented here. The court was not called upon to determine the status of the property. The only question for decision was whether the trial court could compel Mr. Logan to pay his wife money from his separate estate, and whether the court is bound by the property agreement. The case has been cited in *Leonhard v. Leonhard,* 147 Wash. 311 [314], 265 Pac. 1118, and *Otto v. Otto,* 178 Wash. 41, 33 P. (2d) 1074. In each instance, it has been cited with the intention of upholding the theory that courts may divide separate property of spouses in a divorce proceeding and may compel the husband to pay his wife in money or property from his own private estate. The time

element in this and the cited case is so very different. In the *Logan* case, the parties lived together for nine years after they made their property agreement. Here, Mr. and Mrs. Burch lived together but a few months after their reconciliation and neither by acts or words indicated any intention of changing their property agreement.

We are of the opinion that the trial court was justified in holding that the property agreement was enforceable. This is more apparent when we consider that, for almost ten years, appellant stood by and did nothing to protect his claimed rights. During this time, the property was much improved by respondent. Certainly appellant was guilty of laches. 14 Am. Jur. 159, Cotenancy, § 92.

The judgment is affirmed.

ROBINSON, MALLERY, HILL, and HAMLEY, JJ., concur.

[1]Reported in 222 P. (2d) 843.