[No. 32216. Department One. November 20, 1952.]

*In the Matter of the Estate of* HELEN A. HICKMAN,
*Deceased.*

KATHRYN P. CORRICK, *Respondent*, v. SANFORD W. HICKMAN,
*Individually and as Executor, Appellant.*[1]

[1]Reported in 250 P. (2d) 524.

*Clegg & Hickman*, for appellant.
*Savage & DeVange*, for respondent.

DONWORTH, J.—This is an appeal from an order entered after a hearing upon a final report and petition for distribution.

Sanford W. Hickman, appellant, is the surviving spouse of Helen A. Hickman and executor of her estate. She died testate on May 15, 1950, leaving as heirs her husband and two sisters. Her will was admitted to probate and appellant was appointed executor on July 1, 1950. About a year later (July 6, 1951), he filed an inventory of the estate, in which he listed separate and community property appraised at $7,210 and $3,234.98, respectively.

On July 31, 1951, appellant filed his election not to take under the will and his final report and petition for distribution of the estate. Subsequently, respondent, Kathryn P. Corrick, a friend of the testatrix and a devisee under her will, filed objections to the inventory and the final report and petitioned to have appellant removed as executor and his letters testamentary revoked.

The cause was heard October 4, 1951, on all the several issues raised by respondent's objections. On November 9, 1951, the court handed down a memorandum opinion. Findings of fact, conclusions of law, and an order were entered March 20, 1952. From this order, appellant, individually and as executor, has appealed, making twenty-three assignments of error.

A brief statement of the facts will give a better understanding of the issues involved.

From 1906 until 1946, appellant resided on a two hundred forty acre farm in Whitman county. In 1924, he and his first wife conveyed the farm to a relative for the purpose

of putting it beyond the reach of his creditors. His first wife died in 1928, and in 1933 he married Helen A. Hickman, herein called the testatrix. In 1938, the farm property was reconveyed to him. In 1946, he sold the farm on contract, the testatrix joining with him in executing the contract as vendor.

After selling the farm in 1946, he and the testatrix purchased a residence in Clarkston, title to which was taken in the name of the testatrix. At the time title was taken, appellant executed and delivered to his wife a quitclaim deed to the Clarkston property. This deed recited that

"IT IS THE INTENTION of the first party [appellant] to convey the above described property to second party [the testatrix] as her sole and separate property free of any interest of first party community or otherwise in and to said property."

The parties occupied this property as their home from the time of its acquisition until testatrix' death, a period of nearly four years.

In her will, the testatrix devised the Clarkston residence to respondent, subject to a life estate therein in appellant. The testatrix also recited in her will that she had joined with appellant in selling the farm property on contract. She purported in her will to bequeath to him during his lifetime the income from her one-half interest in the contract and provided that, upon his death, all of her claimed one-half interest in the proceeds thereof should pass to respondent. She nominated appellant as executor to serve without bond and without intervention of the court.

Appellant, as executor, excluded from the inventory the farm contract, certain joint bank accounts in the name of himself and his wife, and certain United States savings bonds registered in the name of "Sanford W. Hickman or Mrs. Helen A. Hickman." Respondent's objections to the inventory were based upon his failure to include these items therein.

The trial court found and ordered that the farm contract was appellant's separate property; that the bank accounts and bonds became his separate property upon his wife's

death and were not assets of her estate; that appellant's election not to take under the will was properly made; that he should take nothing by virtue of the will; and that he should not be removed as executor. No one complains of these findings or the parts of the order based thereon, and we need not further consider them.

Appellant's first two assignments of error relate to insurance proceeds in the sum of $172 received by him as executor in payment of a fire loss incurred with respect to the Clarkston residence, being the property which he had quitclaimed to his wife in 1946 as her separate property. It is his contention that, since the fire insurance premium was paid with community funds, the proceeds are community property.

We need not concern ourselves with the theory on which the trial court decided the proceeds were separate property of the testatrix. Fire insurance proceeds stand in the place and stead of property insured and partake of the same character, community or separate, as the insured property. *Rolater v. Rolater,* 198 S. W. (Tex. Civ. App.) 391; 1 de Funiak, Principles of Community Property 211, § 79. The court reached a correct result in declaring the $172 to be separate property of the testatrix.

In his final report and petition for distribution, appellant asked for a family allowance of $125 per month for eight months. In his third and fourth assignments of error, he complains of the trial court's denial of this request.

Appellant is, and was at the time of his wife's death, possessed of substantial separate property consisting largely of the farm contract, which had an unpaid balance of $29,-000 at the time of his wife's death. He also owned approximately $3,800 in the two joint bank accounts and United States savings bonds having a maturity value of $600, all of which the trial court excluded from the estate.

While the interest receivable from the farm contract was approximately one thousand dollars per annum at the time of his wife's death, no actual necessity for the family allowance has been shown. RCW 11.52.040, which pro-

vides that the court may make an allowance for maintenance of the family, is not mandatory; the making of an allowance is discretionary. *In re Armstrong's Estate,* 33 Wn. (2d) 118, 204 P. (2d) 500, and cases cited.

Assuming that application for a family allowance may be deferred until an estate is ready to be closed, we are of the opinion that under the circumstances here presented, the court did not abuse its discretion in denying appellant's petition for a family allowance.

Appellant's next three assignments of error relate to the court's denial of his petition for an award in lieu of homestead out of testatrix' separate real property. This claim was first made in his final account and petition for distribution. His position is that, where the rights of the surviving spouse under the will are inconsistent with his right to claim an award in lieu of homestead, he may elect not to take under the will and may then claim the statutory homestead award on the theory that his wife died intestate as to him. But appellant's argument erroneously assumes that, by reason of his election not to take under the will, the testatrix died intestate as to respondent.

By chapter 102, § 1, p. 223, Laws of 1949 (*cf.* RCW 11.52.024), it is specifically provided that the award shall not be made from separate property of the deceased which is otherwise disposed of by will. We have consistently followed the plain wording of the statute. *In re Eagle's Estate,* 5 Wn. (2d) 254, 105 P. (2d) 31, 109 P. (2d) 1072; *In re Pugh's Estate,* 18 Wn. (2d) 501, 139 P. (2d) 698; *In re Wind's Estate,* 32 Wn. (2d) 64, 200 P. (2d) 748. Since the Clarkston residence was separate property of the testatrix and a remainder interest therein was specifically devised to respondent, we cannot accept appellant's theory, and the trial court correctly held that he was not entitled to an award of the *fee.*

Appellant also argues that, in any event, his life estate in the Clarkston residence given to him by the terms of the will should have been set aside to him. He has

elected, however, not to take under the will. By so electing, he renounced the life estate.

What is the effect thereof: (1) did his life estate terminate and merge in the remainder, or (2) did it not terminate and merge in the remainder but, instead, survive as separate property of the testatrix not otherwise disposed of by will and therefore subject to being set aside to appellant as an award in lieu of homestead?

We are of the opinion that the answer to the question depends upon what was the intention of the testatrix.

It was plainly her intention that appellant should have the use of the Clarkston residence for so long a time as he should need it, and that thereafter respondent should then have its use and title to the entire property. The testatrix wanted to afford appellant personally adequate shelter for the balance of his life. Under this construction of the will, appellant's life estate, upon his electing not to take under the will, ceased and determined and merged in the remainder.

With the extinguishment of appellant's life estate, respondent's remainder interest was enlarged to a fee simple estate. Appellant, therefore, cannot not now have a life estate nor any other interest in the separate property set aside to him in lieu of homestead.

In view of the conclusion we have reached, it is not necessary that we pass on the question as to whether the petition for an award was timely made or whether proper notice of the hearing was given. The trial court did not err in denying the petition for an award in lieu of homestead.

We shall next consider appellant's assignments of error numbers eighteen and nineteen.

■ At the hearing in this matter, he sought to prove an oral contract with the testatrix in which she, in consideration for his quitclaiming the Clarkston residence to her as her separate property, agreed to provide in her will that the property should pass to him. The trial court found that appellant had failed to establish such a contract.

There was only one witness who gave any testimony

bearing directly upon the alleged contract. The trial court had the benefit of seeing and hearing that witness on the stand. When we consider that the evidence to establish an oral contract to devise property must be conclusive, definite, certain, and beyond all legitimate controversy (*Whiting v. Armstrong*, 23 Wn. (2d) 290, 160 P. (2d) 1014, and cases cited), we cannot conclude that the court erred in denying appellant's petition to specifically enforce the alleged oral contract.

In his eighth and ninth assignments of error, appellant complains because the court refused to impress upon the testatrix' separate real property an equitable lien in the sum of $2,117 for improvements placed thereon and paid for with community funds. In refusing to do so, we think, the court erred.

Assuming that there is a presumption that improvements made upon a wife's separate property and paid for with community funds are intended to be gifts to the wife, the evidence was sufficient to rebut such presumption. Appellant, in making these improvements, reasonably believed that he would inherit the property upon his wife's death and did not intend them as gifts to her. Under the facts proved in this case, we are of the opinion that the community estate is entitled to be reimbursed in the sum of $2,117 for the improvements placed upon the separate property, and that, in default of respondent's reimbursing the community estate therefor, the Clarkston residence should be sold and the lien discharged from the proceeds. *Legg v. Legg*, 34 Wash. 132, 75 Pac. 130; *Conley v. Moe*, 7 Wn. (2d) 355, 110 P. (2d) 172, 133 A. L. R. 1089; *Pekola v. Strand*, 25 Wn. (2d) 98, 168 P. (2d) 407; *Burch v. Rice*, 37 Wn. (2d) 185, 222 P. (2d) 847.

But since appellant seeks equity, he should do equity.

From appellant's final report, it appears that he has occupied the Clarkston home since his wife's death. He is individually chargeable with the reasonable rental value thereof since July 1, 1950 (the date when the will was admitted to probate). *In re Alfstad's Estate*, 27 Wash. 175, 67

Pac. 593. His only right to possession of the property and the rents and profits therefrom arises from his appointment as executor; he has no such right of occupancy as an individual. *In re Peterson's Estate*, 12 Wn. (2d) 686, 123 P. (2d) 733.

Respondent argues, with regard to the claim of an equitable lien, that the quitclaim deed by which appellant conveyed the Clarkston property to the deceased conveyed, also, any after-acquired title. Improvements subsequently placed upon the property are not "after-acquired title."

The trial court denied an equitable lien for the benefit of the community estate on the theory that the funds used in making the improvements came from a joint bank account; that under the agreement with the bank each spouse had the right to withdraw all of the funds deposited in the account; that the community funds deposited thereby lost their community character and upon their being withdrawn for the benefit of the wife they became, in effect, her separate property. With this theory, we cannot agree.

In the absence of clear, certain, and convincing evidence that husband and wife intend to change the status of community property, funds which are admittedly community property do not lose their character as such during the joint lives of husband and wife by reason of their having been placed in a joint bank account. *Munson v. Haye*, 29 Wn. (2d) 733, 189 P. (2d) 464.

The trial court therefore erred in denying to the community estate an equitable lien upon the Clarkston residence.

In his tenth and eleventh assignments of error, appellant complains because the trial court failed to set out in its findings and order the specific expenses allowed and approved. The court did find, however, that the expenses of administration and of the funeral and burial were reasonable and proper and that appellant should be reimbursed therefor.

Since a further hearing must be held before a final decree of distribution is entered, the specific amount of these items

may be fixed at that time and reimbursement provided for therein.

Appellant next complains because the court ordered that the funeral and burial expenses and expenses of administration be paid from the community assets of the estate.

The community assets consist entirely of personal property, while (except for jewelry appraised at $210) the only separate asset is the Clarkston residence. In the absence of evidence that the testatrix intended otherwise, the personal property must first be applied to the payment of debts and the expenses of administration. *In re Binge's Estate,* 5 Wn. (2d) 446, 105 P. (2d) 689; *In re Small's Estate,* 27 Wn. (2d) 677, 179 P. (2d) 505.

The clause in the will whereby the testatrix bequeathed to appellant "all other personal property owned by me" was, in effect, a general or residuary bequest. We think the will evidences the intention of the testatrix that the community personal property should first be applied toward payment of the debts and expenses of administration, and that the property specifically bequeathed and devised should not be resorted to unless the proceeds from the sale of the community personal property be insufficient for that purpose. RCW 11.56.160.

The trial court did not err in charging the debts and expenses of administration to the community estate.

Appellant's next two assignments of error are directed to paragraph X of the order, wherein the court purported to distribute the Clarkston residence to respondent free of any interest of appellant but subject to any lien for taxes or charges of the estate.

The object of paragraph X is obscure, but, if it was intended thereby that possession of the property should be delivered to respondent forthwith, this provision is premature.

As executor, appellant has the right of possession until the estate is settled. RCW 11.48.020. Furthermore, it is his duty as executor, prior to delivering any property subject to inheritance tax, to collect from the devisee the tax payable with respect thereto. RCW 83.04.010; RCW 83.44.060;

*State ex rel. Pemberton v. United Pacific Cas. Ins. Co.*, 188 Wash. 304, 62 P. (2d) 729. Nor may a decree of distribution be entered or any part of the estate distributed until a receipt signed by the state treasurer showing that the inheritance tax is paid has been filed with the clerk of the court. RCW 83.52.010. Also, the debts and expenses of administration should be first paid and the estate distributed free of any liens therefor. *In re Small's Estate*, 27 Wn. (2d) 677, 179 P. (2d) 505.

It was error for the court to order distribution of the Clarkston residence to respondent prior to the entry of a final decree of distribution.

Appellant also complains because the trial court, in fixing the amount of the executor's and attorney's fees, did not provide that the sums were allowed without prejudice to any claim for unusual services that might thereafter be rendered. The order, as we read it, does not purport to be a final one as to executor's and attorney's fees, nor is it a final decree of distribution. We do not express any opinion as to whether or not appellant should be allowed any additional fee for himself or his attorneys. The assignment of error is without merit.

Appellant's remaining assignments of error are either without merit or are general in character and have been answered by what we have heretofore said.

This appeal was prosecuted by appellant principally in his individual capacity and partly as executor. Since he has prevailed only as to the equitable lien claimed for the community estate and a reversal of paragraph X of the order, respondent will recover from appellant individually one half of her taxable costs in this court.

The order appealed from is affirmed except as to paragraph X thereof, and as to that paragraph it is reversed. The cause is remanded to the trial court for further proceedings in accordance with the views expressed herein.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.

February 26, 1953. Petition for rehearing denied.