[No. 37090-1-I.   Division One.   March 24, 1997.]
*In the Matter of the Estate of* IDA ELIZABETH BELLINGHAM.
TERRI E. BEVAN, *Respondent,* v. DOUGLAS A. BELLINGHAM, *Appellant.*

---

451

*A. John Losee,* for appellant.

*Carl Palmer* and *McCune, Godfrey & Emerick, P.S.,* for respondent.

PER CURIAM. — Douglas Bellingham appeals an order of partial distribution in the estate of his late wife, Ida Elizabeth Bellingham, in favor of Terri Bevan, her daughter from a previous marriage. Bellingham challenges the trial court's rulings that: (1) the mortgage insurance proceeds were the estate's separate property; (2) his claims for improvements on his wife's separate property during her life were time-barred; and (3) his transfers of property to Bevan were gifts. We reverse the trial court's decision on the first issue and affirm the other rulings.

## FACTS

Ida Bellingham died intestate in July 1992. Her husband Douglas was appointed personal representative of the estate the next month. They were originally married in 1976, then divorced in June 1985. The parties' home and the mortgage obligation were awarded to Mrs. Bellingham in the dissolution decree, with a lien of $4,253 to Mr. Bellingham. In 1985 Mrs. Bellingham began to purchase U.S. savings bonds, which totaled approximately $4,000 at the time of her death.

In 1988, Mr. and Mrs. Bellingham remarried. Bellingham testified he maintained and made numerous improvements on the house before and after his wife's death. On her death, a mortgage insurance policy paid the lender the remaining principal of $39,500 due on the mortgage. Bellingham testified they took out the policy in about 1980 for protection in case either of them died. He further stated: "Even though the property had been 'awarded' to Elizabeth, we never did execute any deed to transfer title, the property was not refinanced in her name, nor was it ever our intent that the property be only Elizabeth's." After her death, Bellingham continued to reside in the house.

He also testified that following his wife's death, he gave Bevan the savings bonds and personal checks totaling $1,700.

In 1994, Bevan filed a petition to determine intestate's share and to compel distribution. Bellingham responded that under RCW 11.04.015,[1] the intestate distribution statute, he was entitled to receive all of the community property and one-half of his wife's separate property. The parties stipulated that, upon her death, the house was Mrs. Bellingham's separate property. The dispute at trial centered on: (1) the disposition of the mortgage insurance proceeds; (2) Bellingham's claims for funds paid to maintain and improve the house *before* his wife's death; and (3) bonds and cash he transferred to Bevan after her mother's death.

The court ruled that because the house had been Mrs. Bellingham's separate property, Bevan and Mr. Bellingham became tenants in common, each receiving a one-half interest under the intestacy laws. The court also ruled that the mortgage insurance proceeds were the separate property of the decedent's estate. The effect of these rulings was to distribute the benefit of the insurance proceeds equally to Bevan and Bellingham.

The court further ruled that Bellingham's claims for reimbursement from the estate for improvements and maintenance from 1985 to the date of death were barred as untimely under RCW 11.40.014 and 11.40.010, provisions governing claims against the decedent. The court also found that Bellingham delivered the savings bonds

---

[1]Under this statute property is distributed as follows:

"(1) Share of surviving spouse. The surviving spouse shall receive the following share:

"(a) All of the decedent's share of the net community estate; and

"(b) One-half of the net separate estate if the intestate is survived by issue;
. . .

"(2) Shares of others than surviving spouse. The share of the net estate not distributable to the surviving spouse . . . shall descend and be distributed as follows:

"(a) To the issue of the intestate . . . ."

and cash "unconditionally" to Bevan and thus they were gifts.

## DECISION

Bellingham first contends the court erred in characterizing the mortgage insurance proceeds as the estate's separate property. He contends the proceeds were community property and therefore belong entirely to him. Bevan contends that the proceeds assume the separate character of the house itself and therefore she takes one-half under RCW 11.04.015.

■ Bellingham's argument is persuasive. Mortgage life insurance, a type of credit life insurance, is usually a "limited term" form of life insurance, often decreasing in value, as the debt is paid down, "with the object of discharging the obligation in the event of the contingencies insured against, and with both the creditor and the debtor . . . having mutual interests in performance by the insurer." 1 J. APPLEMAN & J. APPLEMAN, INSURANCE LAW AND PRACTICE § 59, at 187-88 (1981). *See also Fenton v. Fenton*, 98 Or. App. 655, 780 P.2d 769 (1989) (divorced couple holding property as tenants in common each had interest in the mortgage insurance proceeds to discharge their liability on the mortgage). Although the insurance pays off the debt, the policy insures the *life* of the debtor and not the debt. 1 APPLEMAN at 190.

Because of the nature of term life insurance, premiums for such policies purchase protection from risk of death only for a fixed period of time. *Aetna Life Ins. Co. v. Wadsworth*, 102 Wn.2d 652, 657, 689 P.2d 46 (1984). Accordingly, the community or separate character of a term life insurance policy depends on the character of the funds used to pay the most recent premium. *Aetna*, 102 Wn.2d at 657.

We hold that this analysis applies to this mortgage life insurance policy. Under the rule in *Aetna*, paying insurance premiums with community funds renders the policy community property and, in the absence of some other

beneficiary designation, the proceeds also belong to the community. *See Aetna*, 102 Wn.2d at 662-64. The decedent's interest in the proceeds goes to the surviving spouse under RCW 11.04.015. This result is logical because, as obligors on the mortgage, both the husband and wife had a similar and equal interest in the insurance to discharge their liability.[2]

In so holding, we must reject the trial court's reliance on *In re Estate of Hickman*, 41 Wn.2d 519, 250 P.2d 524 (1952), and *In re Marriage of Pearson-Maines*, 70 Wn. App. 860, 855 P.2d 1210 (1993). Those cases concern fire insurance proceeds, which the court held assumed the character of the *property* insured. *Hickman*, 41 Wn.2d at 523. Because this case concerns life insurance rather than fire or property insurance, the *Hickman* line of cases does not apply.

Because we hold the trial court erred in characterizing the insurance proceeds as separate property, we reverse on this issue and remand for further proceedings consistent with this opinion. We affirm on the remaining issues. The remainder of this opinion has no precedential value and will not be published.

---

[2]At trial, Bevan did not dispute Bellingham's testimony that he and his wife never transferred title to her alone and that she did not refinance in her name. From this we conclude that he remained liable on the mortgage.